In the Matter of CITY OF SCHENECTADY et al., Appellants, v ROBERT F. FLACKE, as Commissioner of the Department of Environmental Conservation of the State of New York, et al., Respondents. (Proceeding No. 1.)

In the Matter of SECOND REFORMED CHURCH OF ROTTERDAM, INC., Also Known as COBBLESTONE REFORMED CHURCH, et al., Respondents, v CITY OF SCHENECTADY et al., Appellants, and NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. (Proceeding No. 2.)

Third Department, April 12, 1984

**APPEARANCES OF COUNSEL**

*Tabner, Carlson & Farrell* (*Paul J. Laudato* of counsel), for appellants.

*John A. Shields* (*Richard R. Rowley* of counsel), for Wilmorite, Inc., respondent.

*Robert Abrams, Attorney-General* (*Francis J. Keehan* of counsel), for Robert F. Flacke, respondent.

*Rowley, Forrest & O'Donnell, P. C.* (*Richard R. Rowley* of counsel), for Second Reformed Church of Rotterdam, Inc., and another, respondents.

**OPINION OF THE COURT**

MAHONEY, P. J.

After extensive hearings pursuant to the State Environmental Quality Review Act (SEQRA) (ECL art 8) in which Wilmorite, Inc., the City of Schenectady and the Town of

Niskayuna participated, the Department of Environmental Conservation (DEC) gave Wilmorite permission to construct a shopping center in the vicinity of the Great Flats Aquifer, which is the major source of water for Schenectady and Niskayuna. Thereafter, pursuant to article 5-B of the General Municipal Law, Schenectady and Niskayuna executed an agreement, dated July 27, 1982, whereby each agreed to enter into and commence a joint public project within the aquifer area. Under this agreement, the two communities were to acquire certain interests in 23 parcels of real property located within the aquifer by condemnation. As required by EDPL article 2, resolutions were passed by the legislative bodies of Schenectady and Niskayuna scheduling a joint public hearing to be held on August 10, 1982.

On August 5, 1982, Wilmorite requested in writing that DEC make a ruling regarding the failure of Schenectady and Niskayuna to obtain a permit as required by ECL 15-1501. On August 11, 1982, DEC informed Schenectady and Niskayuna that it was treating Wilmorite's letter as a petition for a declaratory ruling pursuant to section 204 of the State Administrative Procedure Act, and, on October 22, 1982, DEC issued a declaratory ruling which, *inter alia,* declared that ECL 15-1501 requires that Schenectady and Niskayuna obtain a permit before continuing with their condemnation proceeding. Three days later, the Schenectady City Council issued resolutions containing determinations and findings concerning the project as required by the EDPL. The following day the Niskayuna Town Board did likewise.

On December 17, 1982, Schenectady and Niskayuna commenced a CPLR article 78 proceeding (proceeding No. 1) against DEC and Wilmorite seeking to annul the declaratory ruling made on October 22, 1982 by DEC, or, in the alternative, to require that a hearing be held pursuant to CPLR 7804 (subd [h]). On January 7, 1983, Wilmorite and certain landowners commenced proceeding No. 2 to have Schenectady's and Niskayuna's determinations and findings held void *ab initio,* and to have DEC compelled to enforce its October 22, 1982 declaratory ruling.

The two proceedings were joined for oral argument and, on April 20, 1983, Special Term dismissed Schenectady's and Niskayuna's petition in proceeding No. 1 and granted Wilmorite's petition in proceeding No. 2 to the extent that it requested that each community be enjoined from proceeding any further without obtaining a permit from DEC. Two separate judgments were entered, one on April 27, 1983 and the other on May 3, 1983. On August 8, 1983, Special Term granted Wilmorite's motion for reargument and modified the judgment entered May 3, 1983, declaring all actions taken by Schenectady and Niskayuna in their eminent domain proceedings to be void *ab initio* for failure to comply with ECL article 8 and ECL 15-1501. Schenectady and Niskayuna appeal from each of the judgments.

Necessarily, we turn first to the contention raised by Schenectady and Niskayuna in proceeding No. 1 that Special Term was without subject matter jurisdiction to entertain this proceeding since the Appellate Division has exclusive jurisdiction to determine whether ECL articles 8 and 15 are to be complied with when a municipality seeks to acquire property by condemnation under EDPL article 2. Resolution of this issue turns on an interpretation of EDPL article 2 which establishes the procedures required if a municipality is contemplating the acquisition of property by the power of eminent domain. EDPL 207 (subd [A]), as amended in 1982 (L 1982, ch 356, § 6), states that "[a]ny person * * * aggrieved by the condemnor's determination and findings *made pursuant to section two hundred four of this article,* may seek judicial review * * * by the Appellate Division of the supreme court * * * by the filing of a petition in such court" (emphasis added). EDPL 208 reads, "Except as expressly set forth in section two hundred seven * * * no court of this state shall have jurisdiction to hear and determine any matter * * * which was or could have been determined in a proceeding under this article." Clearly, the 1982 amendment to EDPL 207 (subd [A]), which substituted the phrase "made pursuant to section two hundred four" in place of "made pursuant to this article", expressly limited the broad jurisdictional mandate of EDPL 208 since the latter section limits jurisdiction of condemnation matters to the Appellate Division "[e]xcept as expressly set forth in section two hundred seven".

Accordingly, the issue is narrowed to whether an environmental impact statement (EIS) or permit is part of the procedure under EDPL 204.*

■ EDPL 204 (subd [B], par [3]) reads, "The condemnor, in its determination and findings, shall specify, but shall not be limited to the following: * * * (3) the general effect of the proposed project on the environment and residents of the locality". It is submitted that "the general effect of the proposed project" is not the same as the content of an EIS, which is a detailed analysis (see *First Broadcasting Corp. v City of Syracuse,* 78 AD2d 490, app dsmd 53 NY2d 939; see, also, ECL 8-0105, subd 7; 8-0109; 6 NYCRR 617.14). Accordingly, review of the determination that an EIS or permit is required of Schenectady and Niskayuna is not a procedure within EDPL 204 with exclusive jurisdiction in the Appellate Division. Further, it is submitted that ECL article 8 and ECL 15-1501 (subd 1, pars a, b) involve procedures that precede a condemnation proceeding. This is evidenced by the language of ECL 15-1501 (subd 1, par b), which states that a public corporation may not "condemn lands for any new or additional sources of water supply" until it has first obtained a permit from DEC. Thus, the ECL and EDPL contemplate two different procedures and the former is reviewable by Supreme Court in a CPLR article 78 proceeding.

We now turn to the issue of whether ECL 15-1501 is applicable in the present condemnation proceedings. ECL 15-1501 requires a permit before a public corporation can attempt to acquire or take a water supply or an additional water supply from an existing approved source or to take or condemn lands for any new or additional sources of water supply or for the utilization of such supplies. Schenectady and Niskayuna contend that Special Term incorrectly ruled that ECL 15-1501 is applicable since they were merely acquiring a source of water already utilized and not a new source.

■ While there is little case law dealing with this subject, the case of *Queens County Water Co. v O'Brien* (131 App Div 91) is instructive. In *Queens,* the court had to

---

* DEC merely declared that a permit was needed. However, it would seem that, for purposes of this issue, an EIS and permit are treated similarly.

interpret section 2 of chapter 723 of the Laws of 1905 (apparently a predecessor of ECL 15-1501), which established the powers and duties of the State Water Supply Commission. That statute, in pertinent part, stated that, "No municipal corporation * * * shall * * * have any power to * * * condemn lands for any new or additional sources of water supply, until it has first submitted the maps and profiles therefor to said commission * * * and *until said commission shall have approved the same"* (emphasis added). The issue in *Queens* was whether the City of New York, the condemnor, needed the approval of the State Water Supply Commission before it could condemn lands owned by the Queens County Water Company. The Appellate Division, Second Department, in rejecting the city's argument that such approval was not required since the city prior to the enactment of chapter 723 of the Laws of 1905 derived its water supply from the condemned land, and thus was not condemning any lands for any new or additional sources, held that the mere fact that a municipality derives its water from a source that it does not own, the exact circumstances obtaining herein for both Schenectady and Niskayuna, does not make this source an old source. Here, the lands over the Great Flats Aquifer, the source of the municipalities' water supply, are not owned by either petitioner and, as to each, constitute a potential new source of water. It follows, therefore, that a permit is required before these public corporations can commence condemnation proceedings (cf. *Matter of Programming & Systems v New York State Urban Dev. Corp.,* 61 NY2d 738).

Next, since we have concluded that ECL 15-1501 is applicable herein, and since neither Schenectady nor Niskayuna obtained a permit or filed an EIS before commencing their condemnation proceedings, we must determine if the April 1, 1982 negative declaration and short environmental assessment form for a water study issued by the two municipalities satisfies the requirements of ECL article 8 and its regulations. Initially, we reject the municipalities' contention that the negative declaration was not timely objected to. Since we have concluded that ECL 15-1501 is applicable, the negative declaration was merely a condition precedent to DEC's determination (see *Matter of*

*Save the Pine Bush v Planning Bd.*, 83 AD2d 741, 742), such that it was not final and binding on April 1, 1982.

Since all parties concede that a condemnation proceeding is a Type I action (6 NYCRR 617.12 [b] [4]), it is necessary to determine which is the proper lead agency to make the determination of whether the negative declaration issued by Schenectady and Niskayuna satisfied the requirements of ECL article 8 and thereby defused the failure of these two public corporations to comply with ECL 15-1501. Since we have concluded that ECL 15-1501 (subd 1) is applicable to the facts herein, DEC should have been involved in the designation process. Accordingly, it follows that Schenectady and Niskayuna acted improperly in designating the City of Schenectady Water Department as the lead agency. Since the improper agency was designated, we need not reach the issue of whether the Schenectady Water Department properly performed its function in making its negative declaration.

Finally, we reject the contention of Schenectady and Niskayuna that DEC's declaratory ruling that ECL 15-1501 was applicable, if enforced at the time rendered, was premature and, thus, ineffective. This contention is premised on the municipalities' interpretation of the declaratory ruling to the effect that such ruling required them to apply for a permit before the municipalities acted legislatively. We disagree. ECL 15-1503 (subd 1) and the appropriate regulation (6 NYCRR 601.4) require that, before a permit may be issued, a project must be authorized. Here, there was proper authorization to commence the condemnation proceedings when resolutions were passed by the legislative bodies of Schenectady and Niskayuna to schedule a joint public hearing as required by EDPL article 2. It is necessary to have the requisite permit on hand at these hearings to make an informed choice (see EDPL 201). To hold that permit application could only be made after the final determination to condemn would violate the spirit of SEQRA to assure informed choices and to prevent needless expenditures of time and resources (see *Matter of Programming & Systems v New York State Urban Dev. Corp., supra*). Further, the procedure contemplated by the municipalities could create the anomaly of permit denial after final determination.

The judgments should be affirmed, with costs to respondents filing briefs.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgments affirmed, with costs to respondents filing briefs.