OPINION OF THE COURT
Gerard E. Delaney, J.
In substance this is a CPLR article 78 proceeding brought by petitioners — homeowners located in the Town of Mount Pleasant, County of Westchester and State of New York — to vacate and set aside certain resolutions passed by respondent, Town of Mount Pleasant, which issued a declaration of negative significance under the Environmental Conservation Law and commenced a condemnation proceeding under the Eminent Domain Procedure Law to acquire land along a three- *396 quarter-mile strip of Kensico Road (County Road No. 1308) located within the Town of Mount Pleasant.
Petitioners reside in and own real property in the Town of Mount Pleasant. The Town of Mount Pleasant is a municipal corporation organized under the existing laws of the State of New York. By a previous order of this court dated January 23, 1986, the three intervenors-respondents (Capelli Development Corporation [CDC], Yonkers Contracting Co., Inc. [YCC] and Steven J. Caspi and Building 200 Nominee Corporation) were granted intervention as a matter of right under CPLR 1012 (a) (3) and under CPLR 7802 (d) as "interested” parties. All three intervenors-respondents are developers whose projects within the town had obtained independent approval by the town administration prior to the commencement of the actual underlying condemnation actions. While neither of the three independent developments border directly upon Kensico Road, Kensico Road serves as a major feeder route within the Town of Mount Pleasant and "[t]he widening of Kensico Road has been discussed as a long term planning goal in the town for over ten years and * * * various approvals in the Town of Mount Pleasant have been predicated upon the widening of Kensico Road * * * However, the Planning Board never made a recommendation or took any vote of any kind to request, recommend or suggest that the town prepare any EIS [environmental impact statement] with respect to the condemnation or road widening.” (Affidavit of Albert A. Lucchino, Chairman of the Town of Mount Pleasant Planning Board.)
Contrary to the assertions of CDC and YCC, this court has jurisdiction over the issues raised herein concerning the State Environmental Quality Review Act (SEQRA) notwithstanding the underlying acts/resolutions concerning condemnation under the Eminent Domain Procedure Law (EDPL). (See, Matter of City of Schenectady v Flacke, 100 AD2d 349.)
"As early as 1960 [Town of Mount Pleasant] officials began to be concerned about the growing traffic problems on Kensico Road.” (See, 6 [No. 2] Town of Mount Pleasant Newsletter [Sept. 1976]; see also, Kensico Road — C.R. No. 1308, History of Planned Improvements Summary, published by the County of Westchester.) In 1978, after receiving a report which indicated that a two-lane road was not feasible "in its economics or in its level of service and safety”, the town rejected the preliminary plan, however, again to consider an alternative plan to improve Kensico Road which cost was estimated at approximately $4,500,000, totally funded by the County of Westches *397 ter. "The Town would be responsible only for any cost of land acquisition and other incidental amenities such as lighting, which were not included in the County plan.” (Affidavit of Michael L. Rovello, ex-Supervisor of the Town of Mount Pleasant.)
Kensico Road through the Town of Mount Pleasant is a county road, numbered 1308. The proposed plan and underlying condemnation action concerns itself with the widening of Kensico Road over a length of approximately three quarters of a mile from two lanes to four lanes, encasing drainage from Leith’s Pond spillway and concrete culverts, construction of a new four-foot sidewalk along the entire length of Kensico Road, the installation of traffic lights, the acquisition through condemnation of one house in toto and the condemnation of strips on either side of Kensico Road for a length of three-quarter miles necessary to widen the road from two lanes to four lanes. The total amount of land to be taken by the town for condemnation only is approximately 1.95 acres. Of import to the court is that "in September and October 1984, the Town Board passed resolutions which were intended to assure that 'The Summit’ [CDC] and other existing and proposed developments could rely upon a widening of Kensico Road to accommodate the anticipated traffic from their developments.” (Ibid.)
Therefore, by Town Resolutions Nos. 371-84 (Sept. 25, 1984) and Bond Resolution No. 392-84 (Oct. 9, 1984) it was determined that "by virtue of these resolutions the Town has endorsed, in concept, the widening of Kensico Road” pursuant to the instant plan and controversy. (See, letter of Michael L. Rovello [Oct. 10, 1984].) This action by the town is important for it is respondent’s position that SEQRA was not triggered until a specific project plan for development is actually formulated and proposed. (Cf. Matter of Programming & Sys. v New York State Urban Dev. Corp., 61 NY2d 738.) Such is true. However, respondents view SEQRA as only being triggered in December 1985, when the Town Board passed the resolutions of negative declaration (Resolution No. 699-85); condemnation (Resolution No. 700-85); and notice of Resolution No. 701-85 after having received the short-form environmental assessment form (EAF) from the Town Engineer.
In response to the enactment of SEQRA, the State promulgated rules and regulations that carried out its legislative intent (6 NYCRR 617.1 [b].) 6 NYCRR 617.1 (c) states: "The basic purpose of SEQR is to incorporate the consideration of *398 environmental factors into the existing planning, review and decisionmaking processes of State, regional and local government agencies at the earliest possible time. To accomplish this goal, SEQR requires that all agencies determine whether the actions they directly undertake, fund or approve may have a significant effect on the environment; and, if it is determined the action may have a significant effect, to prepare or request an environmental impact statement.” (Emphasis added.) While “[i]t is not the intention of SEQR that environmental factors be the sole consideration in decisionmaking” (6 NYCRR 617.1 [d]). “No agency involved in an action shall carry out, fund or approve the action until it has complied with the provision[s] of SEQR.” (6 NYCRR 617.3 [a]; emphasis added.)
6 NYCRR 617.5 states:
“As early as possible in an agency’s formulation of an action it proposes to undertake, or as soon as an agency receives an application for a funding or approval action, it shall do the following:
“(a) Determine whether the action is subject to SEQR.” (Emphasis added.)
The trigger factor in the agency’s determination is a low one. Their standard is one of determining whether or not “the actions they directly undertake, fund or approve may have a significant effect on the environment” (6 NYCRR 617.1 [c]; emphasis added).
Why is it that it has been determined by the Legislature and implementing rules and regulations that the local agencies take the environment into consideration ”[a]s early as possible”? (Cf. ECL 8-0109 [4]; 6 NYCRR 617.1 [c].)
If such determination “is not prepared at an early stage * * * later governmental decisions may be influenced by prior governmental decisions or commitments (see Matter of TriCounty Taxpayers Assn. v Town Bd. [55 NY2d 41, 46-47] * * * 'the initiatory action by the town board might well have been practically determinative. In effect the purpose of SEQRA is to assure the preparation and availability of an environmental impact statement at the time any significant authorization is granted for a specific proposal.’ ” (Matter of Sun Beach Real Estate Dev. Corp. v Anderson, 98 AD2d 367, 371-372; emphasis added.) It is important to understand that the condemnation process legally instituted by the town in December 1985 was inexorably intertwined with the development projects of the *399 intervenors-respondents and also in the legitimate determination by the town over the years that Kensico Road was no longer adequate for the needs of the growing community. Under the final instant plan the only part left for the town to play was to follow the formal condemnation process to acquire the actual land. On January 2, 1986, the Town Board of the Town of Mount Pleasant, the majority of whom were new members recently elected, passed a resolution, No. 54-86, wherein they, inter alia, deemed "it in the best interests of the Town and its residents to make a detailed study of the Kensico Road project including a determination whether an Environmental Impact Statement is necessary [and] resolved that resolution 700-85 [the underlying condemnation resolution of the prior Town Board] is hereby rescinded”. However, in January 1986, the new Town Board also passed a resolution (Resolution No. 63-86) "in order to clarify the intent of the January 2nd resolution [No. 54-86] which had rescinded the condemnation approval: resolved, that the condemnation action by the Town of Mount Pleasant is not discontinued but merely stayed pending evaluation by this Board of the Kensico Road project”. The Town Attorney, David C. Dempsey, informed the Town Board on December 9, 1985, inter alia, that "since the condemnation of an interest in real property and proposed widening of Kensico Road does not fall within the list of Type 1 or Type 2 actions under SEQRA [see, 6 NYCRR 617.12, 617.13] or TEQRA [the Towns Environmental Quality Review Act], it is recommended that the Town Board find that the proposed action is an unlisted action under SEQRA [see, 6 NYCRR 617.2 (a), (b)] and TEQRA.” In such letter Mr. Dempsey also recommended that the Town Board declare that the action authorizing the condemnation of an interest in real property and the widening of Kensico Road will not have a significant effect upon the environment, and authorize the circulation of a lead agency notice and a negative declaration” to other agencies. In making such recommendation, Mr. Dempsey relied upon the condemnation proposal before the town which was to permit the development of the Kensico Road widening from two to four lanes and upon the preliminary environmental review short form for unlisted actions.
6 NYCRR 617.12 (a) categorizes what are known as Type I actions. However, "the fact that an action or project has not been listed as a Type I action does not carry with it the presumption that it will not have a significant effect on the environment” (emphasis added). Respondent, Town of Mount *400 Pleasant, acting upon the advice of its town counsel, Mr. Dempsey, determined that the condemnation action of land to widen Kensico Road from two lanes to four lanes was an "unlisted action” (Resolution No. 699-85 of Town of Mount Pleasant [Dec. 10, 1985]).
It is interesting to note that 6 NYCRR 617.13 lists what are known as Type II actions which had previously been determined by the rules and regulations not to have a significant effect upon the environment which would, therefore, not require environmental impact statements or any other determination by the lead agency. 6 NYCRR 617.13 (d) (4) read in conjunction with subdivision (a) reads as follows: "[R]epaving of existing highways not involving the addition of new travel lanes * * * [has] been determined not to have a significant effect on the environment * * * [and does] not require environmental impact statements.” (Emphasis added.) Therefore, by negative implication, such section might well have served as a key to respondents that when talking about the road widening of Kensico Road and the condemnation process, the finding therein of their own determination of significance, visá-vis such road widening/land acquisition, might well be, by the nature of the project, more likely to require the preparation of an EIS than a strict "unlisted action”. By opting and classifying Kensico Road project as an "unlisted action” the procedural requirements under SEQRA were less extensive than those which would have been required had the town determined that the Kensico Road project was a Type I action. (See, 6 NYCRR 617.12 [a].)
Listed as a Type I action under 6 NYCRR 617.12 (b) (6) (i) is "[Construction of new nonresidential facilities which meet or exceed any of the following thresholds * * * a project or action which involves the physical alteration of 10 acres”.
In determining such threshold issue, 6 NYCRR 617.12 (b) (10) also, therefore, defines a Type I action as "any project or action, which exceeds 25 percent of any threshold in this section [i.e., subdivision (b) (6) (i)], occurring wholly or partially within or substantially contiguous to any publicly owned or operated parkland, recreation area or designated open space” (emphasis added).
Within the Town of Mount Pleasant is a public parkland known as Carroll Park which abuts upon Kensico Road and the proposed Kensico Road project/condemnation for an area of approximately 395.85 feet. The total area of the actual *401 condemnation is conceded by respondents to be 1.95 acres. Using such figure, their claim is that it represents only 19.5% of the threshold areas defined by SEQRA above. It is noted by the court, however, that the project does occur "partially within * * * [a] publicly owned or operated parkland” (6 NYCRR 617.12 [b] [10]). Resolution No. 699-85 passed by respondent, Town of Mount Pleasant, however (the condemnation resolution) is, as mentioned above, so totally connected with the entire Kensico Road road widening project (i.e., it would result in the taking of lands by the Town of Mount Pleasant for the purpose of widening and realigning Kensico Road) that the entire road widening process can be seen to involve more than the actual 1.95 acres of land to be condemned. The town has never considered the acquisition by eminent domain of the strips of land abutting Kensico Road in a vacuum but, rather, as a necessary adjunct to the total improvement project revision for Kensico Road. Therefore, this court does consider such town action for the proposed project in the manner in which it is so obviously intended. While it may be true that the condemnation "taking” by the town of additional land may involve only 1.95 acres, SEQRA is concerned with the scope of the entire project contemplated. (Cf. 6 NYCRR 617.1 [a], [d]; definition of "Action” — 6 NYCRR 617.2 [b]; 6 NYCRR 617.3 [a].) The court agrees with petitioner that it is, for the purposes of the Environmental Conservation Law, not strictly the "total area to be acquired” which is the key threshold for SEQRA but the new area to be affected by the project and indeed, in this court’s opinion, the total area to be affected by the project, i.e., the entire Kensico Road project under consideration. Mr. Priano has calculated that the new area to be affected by the project ranges from 2.6 to 3.3 acres. Such was based upon the linear distance of the project of approximately 3,500 feet with a width of 30 to 38 feet (two 11-foot lanes, a 4-foot sidewalk and a 4- to 12-foot barrier which totaled approximately 105,000 to 133,000 square feet or 2.6 acres to 3.3 acres) before the actually widening per se. That is, the new widening affects land above and beyond the actual plan contemplated for taking under eminent domain purposes of the widening. It is also obvious that whether one considers respondent’s allegation that the threshold concerns itself only with the land of the taking (1.95 acres) or the petitioner’s allegation that the actual widening involves 2.6 to 3.3 acres, that the existing Kensico Road (the current two lanes) is itself involved in the upgrade process and is part of *402 the "action” for the purposes of SEQRA. Considering the entire project, it appears to this court that such project involves more than 2.5 acres and accordingly "exceeds 25 percent of [the 10 acre] threshold” (6 NYCRR 617.12 [b] [6] [i]; [10]) and that such by virtue of its falling "partially within * * * [the] publicly owned or operated parkland” of Carroll Park in the Town of Mount Pleasant that such, in and of itself, was a Type I action for purposes of SEQRA procedures. (Cf. Matter of Kirk-Astor Drive Neighborhood Assn. v Town Bd., 106 AD2d 868, 869.)
Thus, having found initially that the Kensico Road project in the Town of Mount Pleasant was and should have been considered a Type I action under SEQRA, the town was required to follow the procedural requirements of 6 NYCRR 617.6 which are more extensive than those of the unlisted actions for which the town has designated such property improvement. (Cf. 6 NYCRR 617.12 [a].) Type I actions are required to have a long-form EAF completed and submitted prior to finding or approval of the Type I action. (6 NYCRR 617.3 [d]; see also, 6 NYCRR 617.6 [b].) No such environmental assessment form in its long form and with the scope demanded by SEQRA was submitted or considered by the town prior to approval and funding, although the town did utilize a short-form EAF which was authorized for "unlisted actions” (cf. 6 NYCRR 617.2 [l]; 6 NYCRR 617.7 [b]). A mere cursory review of the model long-form environmental assessment form contained in 6 NYCRR 617.19 makes it clear that the short-form EAF submitted by the Town Engineer, James Vanoli, to the town dated December 6, 1985, falls far short of the scope concerns addressed by SEQRA for such actions in enabling the town as lead agency to determine the environmental significance or nonsignificance of its actions. "[Substantial compliance with the 'spirit’ of the act does not constitute adherence to its policies 'to the fullest extent possible’ ” (Town Assn. v Town of Rye, 82 AD2d 474, 480-481).
Accordingly, this court finds for petitioner initially under CPLR 7803 (3) and finds that the resolution of condemnation numbered 700-85 passed by the Town of Mount Pleasant on December 10, 1985, not having complied with requirements of SEQRA categorized above, was made in "violation of lawful procedure” and that such determination should properly be held void, of no effect and, accordingly, is vacated. On the same grounds, the court finds that resolution numbered 699-85 passed by the Town of Mount Pleasant which included a *403 determination of nonsignificance was also done in violation of lawful procedure and, accordingly, annulled, deemed of no effect and is vacated.
However, in the alternative, this court also finds that even if the action of the town in passing Resolutions Nos. 699 and 700 of 1985 were properly based upon determining the Kensico Road project to be an "unlisted action” that such determination of environmental nonsignificance was made by the Town Board of Mount Pleasant in an arbitrary and capricious manner and was also not based upon substantial evidence, as those standards are recognized under CPLR article 78.
In issuing a determination that a proposed project would not have any significant environmental impact, such a negative declaration will pass judicial scrutiny only if the record before the court indicates that the agency "identified the relevant areas of environmental concern, took a 'hard look’ at them * * * and made a 'reasoned elaboration’ of the basis for its determination” (cf. Aldrich v Pattison, 107 AD2d 258, 265; see also, H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232). This court specifically finds, under the circumstances in the record, that no such "hard look” was given to the environmental concerns prior to the declaration of nonsignificance by the Town of Mount Pleasant. This is not to say that under the circumstances, Kensico Road should not be improved and/or altered. That is not the issue before the court. However, the record demonstrates that the environmental concerns of the Kensico Road project in toto were given short shrift by the town in their last minute rush for approval. As this court has indicated above, when the town passed its resolutions in September and October of 1984, for all practical purposes the Kensico Road project in its current form was approved by the town and the town’s part of funding was underway. Indeed, at the public hearing on December 9, 1985, ex-Supervisor Rovello had the following colloquy with a citizen:
"Mr. Mauro: Will it [EIS] be in your hands before the Town approves this project?
"Supervisor Rovello: The Town has already approved this project, Mr. Mauro * * * This Town Board took action last year. It voted a bond resolution last year.”
The respondent, Town Board, failed to follow procedures requiring it to "make an initial determination whether an [EIS] need be prepared * * * as early as possible” (ECL 8-0109 *404 [4]; 6 NYCRR 617.5; cf Inland Vale Farm Co. v Stergianopoulos, 65 NY2d 718, 720). It was not the respondent’s actual condemnation resolution which triggered SEQRA, as is urged by respondents, but rather it was the initial formulation of the instant plan of Kensico Road Project Renewal, Widening and Renovation which constituted the action and/or when the Kensico Road project was funded and approved by the 1984 town resolutions which should have put the town on notice of their SEQRA responsibilities. While the town in its Resolution No. 699-85 (negative impact) stated that such road project "action is consistent with [inter alia] * * * Environmental Impact Statements prepared for the building development projects” of the individual intervenors-respondents, a review by the court of such EIS’s as submitted by intervenors-respondents show they are, in and of themselves, insufficient to address specific environmental concerns of the actual Kensico Road project itself. Yes, the intervenors-respondents’ individual EIS’s for their project did study the traffic problems vis-ávis Kensico Road’s current capacity and the increased volume associated with additional development of their individual concerns, however, all of the respondent-intervenors’ EISs were geared to their individual developments wherein Kensico Road was viewed merely as a feeder/access route and considerations of it were directed primarily to the recognition that it need be improved and/or widened in order to accommodate the individual developments. The only specific environmental look at the Kensico Road project was that of James Vanoli, the Town Engineer, in a report submitted to the town on December 6, 1985 (a short-form EAF) wherein Mr. Vanoli alerted the town, inter alia, to the following potential impacts of the Kensico Road project (areas directly affected): slopes, lake, pond, river or stream, floodway or flood hazard area, air quality, stream banks are to be reconstructed, wetlands. Following Mr. Vanoli’s short EAF alert to potential problems, the Town Board passed a resolution of nonsignificance, No. 699-85, in obvious disregard of the SEQRA standards which would require an EIS if the action "may have a significant effect on the environment” finding, inter alia, that: "the proposed action should not cause a substantial adverse change in existing air quality, water quality, noise levels, solid waste production levels or the potential for flooding, erosion or drainage problems” (see, Resolution No. 699-85 of the Town of Mount Pleasant, at 2-5 for detailed environmental findings).
Under the circumstances as described above, even consider *405 ing this as properly an "unlisted action” for purposes of SEQRA, this court finds approval of the negative determination of environmental significance to be arbitrary and capricious and further finds that both the resolution of nonsignificance (Resolution No. 699-85) and the resolution of condemnation (Resolution No. 700-85) insofar as the legal requirements of SEQRA are concerned, were not based upon substantial evidence and for both such findings, under CPLR article 78, determines that such resolutions should be vacated and set aside forthwith. This court’s alternative viewing of the Kensico Road project as being an "unlisted action” and its finding above, that with the facts and evidence as submitted that the Town Board of the Town of Mount Pleasant did not take a "hard look” and make a reasoned determination of its responsibilities under SEQRA, to the extent that such is in violation of the standards of CPLR article 78 regarding arbitrary and capricious decisions and ones based upon a lack of substantial evidence, directly affected the condemnation project action per se. This court having found that the town resolutions of negative declarations of environmental significance and the condemnation resolution were both improper as a matter of law, the condemnation action commenced by the town in this court cannot stand without a proper legal basis.
Accordingly, this court finds for petitioners to the extent that the resolution of the Town Board of the Town of Mount Pleasant numbered 699-85, the environmental negative declaration regarding the Kensico Road project is void and hereby vacated for the reasons stated above; this court further finds that Resolution No. 700-85, the town’s condemnation resolution for the Kensico Road project property, is also void and hereby vacated for the reasons stated above. To the extent that petitioners seek a preliminary injunction enjoining respondent, Town of Mount Pleasant, from proceeding with the Kensico Road project, such issue is mooted by the above declaration and judgment of the court negating the condemnation resolutions. Accordingly, the application for a preliminary injunction is denied without prejudice.
Judgment for petitioners.