## (June 14, 1979)

■ In the Matter of the INCORPORATED VILLAGE OF MALVERNE, Petitioner, Relative to Acquiring Title to Real Property for the Storm Water Drain Hempstead Avenue Drainage Area, Inc., in the Town of Hempstead.— Proceedings (1) by the condemnees, pursuant to EDPL 207, to review the procedures utilized by the condemnor, the Village of Malverne, in acquiring a permanent and enlarged easement over the condemnees' property for the installation of a drainage pipe and (2) by the condemnor, *inter alia,* (a) to confirm its determination that the taking is *de minimis* and that a public emergency exists and (b) for an order granting the condemnor immediate possession pursuant to EDPL 402 (subd [B], par [6]). Proceeding by the condemnees dismissed, without costs or disbursements. Petition by the condemnor granted, without costs or disbursements, its determination is confirmed and it is entitled to immediate possession. The condemnor, the Village of Malverne, since 1938, has possessed a 10-foot-wide easement over the property of the condemnees, Richard and Patricia Gumo, for the placement of a 30-inch drainpipe. The village is undertaking an improvement of its drainage system designed to control flooding from storm waters, and part of the plan entails the replacement of the existing pipe that runs through the condemnees' property with a 42-inch main. The village has already contracted for the work, which extends six blocks, and the work has progressed to the foot of the condemnees' property. By this proceeding the condemnees question the procedures utilized by the village in adopting a resolution authorizing the acquisition of a permanent easement encompassing 854 square feet of their property to replace a temporary working easement, which includes 826 square feet of the condemnees' property previously acquired and possessed by the village to permit the installation of the new pipe. They maintain that there is no public emergency and that no flooding has occurred since 1975. The village claims that an emergency exists due to the fact that if the contractor is forced to delay its work, the village may be liable in damages for a substantial sum. The condemnees assert that this is not a proper ground to find an emergency, that the condition is self-created since village officials knew that the condemnation proceeding was being contested and that the village should have protected itself when entering into the construction contract. To place this matter in its proper perspective, the following chronology of events will supply the pertinent background:

April 26, 1978 A meeting between the condemnees and representatives of the condemnor resulted in a revised acquisition map dated April 28, 1978 (which contemplated a temporary work easement over an area of 826 square feet owned by the condemnees instead of a permanent easement for the laying of 42-inch pipe within the limits of a 10-foot-wide drainage easement which already burdened the property with a 30-inch pipe pursuant to an easement dated Feb. 21, 1938).

May 3, 1978 The village board adopted a resolution directing a public hearing with respect to the revised map.

June 7, 1978 A public hearing was held pursuant to said resolution, at

which the condemnees appeared and objected without presenting any expert testimony or opinions.

July 5, 1978 The village board passed a resolution adopting the revised map of April 28, 1978.

August 4, 1978 A petition by the village initiating a condemnation proceeding for an order vesting possession of the area of the temporary work easement of which the condemnees had notice was returnable and the condemnees neither appeared nor objected.

August 11, 1978 An order of vesting of the temporary work easement was granted by the Supreme Court, Nassau County.

Between August 11, 1978 and October 6, 1978 The condemnees commenced an action to declare that the village could not lay a 42-inch pipe within the limits of the 1938 drainage easement.

October 6, 1978 The Supreme Court, Nassau County, denied the condemnees' application for a preliminary injunction.

November, 1978 The village awarded a construction contract for the drainage project, work to commence in the spring of 1979.

March 28, 1979 The village notified residents within the project area, including the condemnees, that work would commence shortly.

April 16, 1979 The condemnees made a second application for a preliminary injunction in the declaratory judgment action, which was temporarily granted by order to show cause.

April 23, 1979 The Supreme Court, Nassau County, denied the application of the village to vacate the temporary restraining order and thus let it stand.

May 1, 1979 The condemnees' second application for a preliminary injunction, sought by the April 16, 1979 order to show cause, was returnable.

May 2, 1979 The village adopted a revised map dated April, 1979 to acquire a permanent easement of 854 square feet of condemned property, including the 826 square feet which were the subject of the earlier map.

May 4, 1979 The village commenced its proceeding for an exemption pursuant to EDPL 206 on grounds of a *de minimis* taking and the existence of an emergency.

May 11, 1979 The condemnees petitioned for review of the proceeding commenced pursuant to EDPL 206.

May 16, 1979 The Supreme Court, Nassau County, transferred to this court the application of the village for an order of immediate possession pursuant to EDPL 402 (subd [B], par [6]).

In our opinion the procedure utilized by the village in acquiring the easement was proper since the acquisition is not only *de minimis* in nature, but also because an emergency situation exists which, if not soon corrected, will endanger the public interest (see EDPL 206, subd [D]). The taking involved here, to wit, an 854 square foot permanent easement, of which only 28 square feet were not included in the earlier acquired and possessed temporary working easement, is clearly a *de minimis* one. Whether the emergency situation which provides an alternate basis for this exemption arises out of the need to alleviate the flooding conditions or the village's potential liability for substantial damages if the work is delayed, such a situation does nevertheless exist. The assertion by the condemnees that there has not been any flooding since 1975 is not supported by any substantial proof. On the other hand, the village has submitted ample proof that an

emergency exists which it has tried unsuccessfully to rectify by other means. We find persuasive an affidavit submitted by one of the affected property owners which states that during a recent thunderstorm her property was flooded with water whith went into her garage, front yard and back yard, and came up to the basement window wells. She also points out that on previous occasions water has actually flooded into her finished basement. She asserts that for years residents of the affected area have been continually forced to request that village authorities take some action to alleviate this condition. It may also be persuasively argued that the legally uncertain and potentially prejudicial position in which the village had been placed by the temporary restraining order of the Supreme Court, Nassau County, on April 16, 1979, halting the project constitutes an emergency. The village was thereby subjected to financial obligations and liabilities considerably in excess of the amounts appropriated for the project after complying with the proper procedures for the condemnation of the temporary work easement on the condemnees' property. The condemnees' assertion that this emergency was self-created does not withstand close scrutiny. The contract was awarded in November, 1978 for the work to commence in the spring of 1979 after possession of the working easement had been vested, after a preliminary injunction had been denied in October, 1978 and at a time when the condemnees had failed to preserve any remedy with respect to the earlier taking by their failure to appeal. We note that the village properly commenced its proceeding in the Supreme Court, Nassau County (see EDPL 402, subd [B]), and that that court transferred it here so that it could be heard with the proceeding commenced by the condemnees. In view of the exigencies presented and the fact that neither party has complained (see *Cullen v Naples,* 31 NY2d 818), we have disposed of the condemnor's proceeding as well as the condemnees'. Finally, the condemnees' contention that the deletion of the hold-harmless agreement contained in the original easement is an improper taking of a material property right, is not properly before this court; the scope of review in the proceeding is limited to matters enumerated in EDPL 207. Rather, such a claim, which is actually a claim for damages, should be raised before the condemnation court. Damiani, J. P., Suozzi, Margett and Mangano, JJ., concur.