FIRST BROADCASTING CORPORATION, Petitioner, v CITY OF SYRACUSE, Respondent.

Fourth Department, January 16, 1981

**APPEARANCES OF COUNSEL**

*Grass, Balanoff & Costa (Raymond Dague* of counsel), for petitioner.

*David M. Garber, Corporation Counsel (Anthony Bottar of counsel), for respondent.*

OPINION OF THE COURT

CARDAMONE, J. P.

In this proceeding brought in the first instance in this court pursuant to section 207 of the Eminent Domain Procedure Law (EDPL) petitioner First Broadcasting Corporation appeals from a determination of the Commissioner of Public Works of the respondent City of Syracuse, which recommended the condemnation of an avigation easement above petitioner's property. The determination is confirmed.

On September 4, 1979 the Common Council of Syracuse adopted Ordinance No. 466-1979. It authorized the city Commissioner of Public Works to commence condemnation proceedings involving petitioner's property for the purpose of eliminating the aviation hazard to Syracuse Hancock International Airport caused by petitioner's towers. Notice of a public hearing on the proposed condemnation was published in the *Post Standard*, a local Syracuse newspaper, on April 28, 29, 30, May 1 and 2, 1980.

On May 13, 1980 a public hearing on the matter was held before Duane P. Leib, Commissioner of the Department of Public Works, pursuant to EDPL article 2. The premises known as 6609 Collamer Road, Town of DeWitt, Onondaga County, are owned by the petitioner, which operates radio station WFBL from the premises. At the hearing Burt Weidenkopf, Commissioner of Aviation for the City of Syracuse was the only witness. He testified that it was necessary to remove or lower the radio towers since they were within the geometric configuration of the horizontal plane that Federal regulations create. Under Federal regulations (14 CFR Part 77) any building or obstruction of any kind more than 150 feet above the airport elevation becomes an obstruction to air navigation and a potential hazard. He stated that at the present time the towers are seriously restricting the instrument approach procedures, the "circling minimum" and the "decision height" on approach procedures. Weidenkopf also testified that the towers are a psychological hazard to the pilots. The FAA (Federal

Aviation Administration) has inserted a clause in the last two airport grant agreements precluding further airport funding until the towers are removed. The proposed funding amounts to over two million dollars. The environmental impact of granting such easement would be the lowering of the towers and the restriction of land use up to the easement altitude. Removal of the towers would permit the receipt of Federal moneys. The witness did not anticipate that removal of the towers would have any significant impact on broadcasting by WFBL. Further, the city had been working in co-operation with WFBL and anticipated that an alternative site could be found so that WFBL would be able to broadcast their programs without interruption of service. He foresaw no other possible impact.

The petitioner did not appear at the hearing, but instead submitted a written statement. In the written statement, dated May 23, 1980, it contended that the towers did not constitute a danger to the public; that they were in existence before the airport; that their removal would result in the inability of WFBL to conduct its business; and that no offer had been made to compensate WFBL. Petitioner also noted that it had located an alternate site for its towers, that the County of Onondaga was in the process of enacting a local law authorizing provision for a new location, and that negotiations with the City of Syracuse for the funding of such removal were taking place.

In the hearing commissioner's determination and findings of fact he found that the taking was for a public use and recommended the condemnation of the avigation[1] easement. The city then instituted an action in Supreme Court to acquire title to petitioner's real property on which the subject radio towers are located. On this appeal we are limited to reviewing the actions of the commissioner which in this case recommended that the city take an avigation easement over petitioner's property. The fact that the city petitioned Supreme Court for an order vesting title in these lands in it under EDPL article 4 is not presently before us.

We turn to the relief sought by petitioner. It seeks an

---

1. Avigation is a combination of the words "aviation" and "navigation" when used with regard to airplanes which "navigate in the air".

order directing the city to discontinue its condemnation proceeding which it commenced in Supreme Court. Since that matter is not properly before us, we make no determination with respect to it.[2] Petitioner also seeks a new administrative hearing. Its claims precisely track this court's power to review as set forth in EDPL 207 (subd [C]) which states:

"(C) The court shall either confirm or reject the condemnor's determination and findings. The scope of review shall be limited to whether:

"(1) the proceeding was in conformity with the federal and state constitutions,

"(2) the proposed acquisition is within the condemnor's statutory jurisdiction or authority,

"(3) the condemnor's determination and findings were made in accordance with procedures set forth in this article, including, where applicable, a determination that an acquisition is exempt from compliance with this article, and

"(4) a public use will be served by the proposed acquisition."

Taking its arguments in order, petitioner contends that respondent has failed to comply with EDPL article 3 (Offer and Negotiations). It specifically cites sections 301 (Policy), 302 (Appraisals; prevesting discovery), 303 (Offer) and asserts that such noncompliance amounts to a denial of due process. Respondent City of Syracuse asserts that the EDPL provides for limited judicial review and review of the city's alleged noncompliance with EDPL article 3 is beyond review by this court. Furthermore, respondent contends that the requirements of procedural due process have been met.[3]

Our review is limited to the question as to whether condemnor's determination and findings were made in accord-

---

2. Since determination after public hearing in the present case did not recommend the acquisition of title to petitioner's real property, a question is raised concerning the city's statutory authority to acquire by condemnation petitioner's property located in the municipality of the Town of DeWitt.

3. The Attorney-General was properly notified (CPLR 1012) and declined to intervene.

ance with the procedures set forth in EDPL article 2 (EDPL 207, subd [C], par [3]; see, also, *Matter of Incorporated Vil. of Malverne,* 70 AD2d 920, 922).

As part of its first point raised on this appeal petitioner claims that the EDPL itself is unconstitutional. We note that the EDPL was "the culmination of nearly seven years of effort by the members of the State Commission on Eminent Domain" (Governor's Memorandum, McKinney's Cons Law of NY, Book 16A, EDPL, p IX). The statute provides for a uniform procedure and requires public hearings, notice, publication of determinations and findings and, of course, judicial review. This is exactly the stuff of procedural due process *(Fifth Ave. Coach Lines v City of New York,* 11 NY2d 342). Petitioner cannot deny that it received adequate actual notice. Neither can petitioner argue that it was not offered an opportunity to be heard. In fact, petitioner's position was made known to the commissioner who acknowledged receipt of its written statement in his published findings. We see, therefore, no denial of procedural due process. What petitioner appears to be claiming is that the EDPL, because it fails to specify any standards to be applied before the condemnor takes property, denies *substantive* due process. It asserts that without a stated standard to apply for condemnation, it is just as likely that the city is proceeding merely because of the Federal moneys at stake rather than for reasons of air traffic safety. Petitioner cites no authority for its position. The city has not responded to the petitioner's contentions, but asserts that the requirements of *procedural* due process were satisfied here.

Section 6 of article I of the New York Constitution provides that "No person shall be deprived of life, liberty or property without due process" and article I (§ 7, subd [a]) provides that "Private property shall not be taken for public use without just compensation". The power of eminent domain is inherent in the State. It is an attribute of sovereignty resting upon political necessity, and as essentail to the effective existence of the State as the police power and the power of taxation (17 Carmody-Wait 2d, Eminent Domain, § 108:2, p 380). It has been stated that "[t]he

power of the State to appropriate private property for public use can be held subject to no further limitation than that the statute under which the property is taken shall recognize on the taking of the property the absolute right of the owner to just compensation and make provision for the prompt determination and payment of such compensation from the public funds" *(Pauchogue Land Corp. v Long Is. State Park Comm.,* 243 NY 15, 24).

The EDPL is replete with references to the applicable standard—land may only be taken for a public use. EDPL 201 requires a public hearing to review the public use to be served by a proposed project. EDPL 204 (subd [B] par [1]) requires that the condemnor specify in its determination and findings the public use, benefit and purpose to be served by the proposed public project. (See, also, EDPL 101, 103, 203, 204, 205.) EDPL article 5 details the procedure for determining just compensation.

Moreover, substantive principles of due process of law require that an act has a reasonable relation to a proper governmental purpose so as not to constitute an arbitrary exercise of governmental power. A purely arbitrary or capricious exercise of that power would result in a wrongful invasion of private property rights and is violative of the due process guarantee. The act here permits the city to exercise the power of eminent domain only for a public purpose and the act provides the owner with just compensation. The EDPL does not violate substantive due process (see Nowak-Routunda-Young, Constitutional Law, p 440; McGehee, Due Process of Law, p 255; 1 Nichols, Eminent Domain, § 4.9, p 4-38; *Chicago, Burlington & Quincy R.R. Co. v Chicago,* 166 US 226, 234-237; *Matter of Concordia Coll. Inst. v Miller,* 301 NY 189, 194-195; *Eubank v Richmond,* 226 US 137, 143-144; see, e.g., *Paterson v University of State of N.Y.,* 14 NY2d 432, 438; *Matter of Bauch v City of New York,* 21 NY2d 599, 606, cert den 393 US 834; *Noyes v Erie & Wyo. Farmers Co-op. Corp.,* 281 NY 187, 195).

Here the hearing commissioner determined that the exercise of the city's power of eminent domain was for a public use—airport safety—and such determination should

not be disturbed unless the use is shown to be clearly private (17 Carmody-Wait 2d, Eminent Domain, § 108:9, pp 394-395; *Yonkers Community Dev. Agency v Morris*, 37 NY2d 478, 481, app dsmd 423 US 1010). The fact that the city may gain financially from the condemnation does not undercut the public purpose of the condemnation (see *Yonkers Community Dev. Agency v Morris*, 37 NY2d 478, 482, app dsmd 423 US 1010, *supra; Matter of Ryers*, 72 NY 1, 8). Finally, insofar as the constitutional claim is concerned, petitioner has not overcome the presumption of constitutionality; "[s]uch presumption can be overcome only by the most cogent and compelling reasons, absent here" *(Alper v Nowakowski*, 58 AD2d 1012, mot for lv to app den 42 NY2d 810; see Tribe, American Constitutional Law, pp 427-455). The legislative act—is not a confiscatory invasion of property rights and its provisions are not a denial of substantive due process.

For its second claim First Broadcasting challenges the city's authority to condemn an interest in land outside its boundaries. The authority is found in section 355 of the General Municipal Law which permits the condemnation or abatement of flight hazards which lie within 3,000 feet of a municipal airport "or within such greater distance as the Federal Civil Aeronautics Administration or its successor may declare to be necessary". The same section permits the city to condemn the right to unobstructed use of the airspace within the same distance.

Petitioner's third point alleges a failure to comply with the procedures set forth in the EDPL; specifically, that the condemnor did not make proper findings in regard to the environmental impact of the removal of the towers. Plainly, the removal of the towers will have no environmental impact, although once they are removed, aircraft may be able to fly at a lower level. But that is an environmental consequence of airport operations.

Further, the hearing commissioner carefully followed the requirements of EDPL 204. He stated the public use to be served by the easement. He found that the avigation easement would permit the city to eliminate an obstacle to avigation, expand the airport's operational capability and reduce existing psychological hazards to flying in and out of the

airport (EDPL 204, subd [B], par [1]). The location of the proposed project and the reasons for the selection of that location were implied, if not expressly stated, by the commissioner's finding that the height of the radio towers and their proximity to the airport restricted flight operations (EDPL 204, subd [B], par [2]). The "general effect of the proposed project" on the environment and residents of the locality was briefly stated. The hearing commissioner found that the condemnation was limited to the operation of radio station WFBL and the costs associated with the relocation of the WFBL radio towers (EDPL 204, subd [B], par [3]).[4]

Petitioner's final contention is that respondent has not demonstrated that a public use will be served by the condemnation. The determination and findings of the hearing commissioner amply demonstrate that a public use will be served by the condemnation of the petitioner's towers. The hearing officer found that the towers were an obstruction and potential hazard to avigation at the airport and that the condemnation will benefit the public through increased safety and convenience in flight operations at the airport. The determination of whether a taking of property is for a public use is a judicial question (see, e.g., *Yonkers Community Dev. Agency v Morris*, 37 NY2d 478, app dsmd 423 US 1010, *supra; Fifth Ave. Coach Lines v City of New York*, 11 NY2d 342, 349, *supra*). It is well settled that the condemnation of land for an airport is for a public use *(County of Orange v Metropolitan Transp. Auth.,* 71 Misc 2d 691, 697, affd 39 AD2d 839).

The determination should, therefore, be confirmed and the petition should be dismissed.

HANCOCK, JR., CALLAHAN, DOERR and MOULE, JJ. concur.

Determination unanimously confirmed without costs and petition dismissed.

---

4. Compare the National Environmental Policy Act (US Code tit 42, § 4321 *et seq.)* which specifically requires a "detailed" environmental impact statement (US Code, tit 42, § 4332, subd [C]) with the EDPL 204 (subd [B], par [3]) "general effect" language.