In the Matter of WALDO'S, INC., Petitioner, v VILLAGE OF JOHNSON CITY, Respondent.

Third Department, October 20, 1988

### APPEARANCES OF COUNSEL

*Hancock & Estabrook (William L. Allen, Jr.,* of counsel), for petitioner.

*Gerald J. Blasi* for respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

The Oakdale area of respondent, the Village of Johnson City in Broome County, is experiencing severe traffic congestion due to rapid commercial development which included the construction of the Oakdale Mall, a motel and several restaurants. By eminent domain, respondent seeks to acquire certain property, including that owned by petitioner, along Harry L. Drive to construct a four-way intersection for access to and from the Oakdale Mall and property across Harry L. Drive owned by Wegmans Enterprises, Inc. (hereinafter Wegmans). Respondent's decision to go forward with this project resulted from at least three studies of the Oakdale area conducted since 1978.

The first study was made by the Oakdale Task Force (here-

inafter Task Force). The Task Force concluded that traffic congestion was the most serious threat to the area. It recommended several changes such as adding more turning lanes. The second study was prepared by the Binghamton Metropolitan Transportation Study (hereinafter BMTS), a committee of local governments and planning agencies designated by the Governor and responsible for a comprehensive plan for the urbanized area of the City of Binghamton, Broome County, which includes respondent's Oakdale area. The BMTS set forth possible solutions, emphasizing that "[t]he most important thing that needs to be done for the Oakdale area is to design and construct the Route 201/Harry L. Drive/Reynolds Road intersection so that it will be able to handle the projected traffic volumes". Like the Task Force, the BMTS agreed that there should be a single four-way intersection at the current western access to the Oakdale Mall and that the Wegmans land should be accessible from the same four-way intersection. Indeed, the BMTS, which designates how certain highway and transit funds are to be spent, has included improvements to Harry L. Drive on its program since 1983 and $1.5 million in Federal money was programmed in 1984 for the project.

Finally, in 1979, respondent's Mayor asked the State Department of Transportation (hereinafter DOT) to prepare a project initiation request (hereinafter request), which is the principal report permitting the programming of funds in the State. The final request was released in October 1986 and states, "The one item on which there seems to be general concurrence between all parties * * * is that the Oakdale Mall area is one of the largest traffic generators in the Binghamton Urban Area." The request discussed alternative solutions to the traffic problem but concluded, as did the other studies, that a four-way intersection located on Harry L. Drive at the western entrance to the Oakdale Mall would be the best method to accommodate existing and future traffic needs in the Oakdale area.

Because the three studies unanimously agreed that the traffic situation in the Oakdale area was bad and getting worse, respondent decided that it could not wait until 1992, when the DOT timetable scheduled construction. Therefore, respondent initiated talks with Interstate Properties (hereinafter Interstate), which is the owner and operator of the Oakdale Mall, Wegmans and Three Broome Associates (hereinafter Three Broome), another nearby landowner, to raise private

funds to be used with funds appropriated by the BMTS so that a portion of the public project could start immediately, rather than in 1992. Interstate, Wegmans and Three Broome agreed to work with respondent and a two-phase plan was developed. Phase 1 includes a financial commitment of up to $1.5 million from Wegmans, a $100,000 contribution from Interstate, the donation of land by Interstate and Three Broome, and the appropriation of private land, including petitioner's property. Interstate also agreed to reconstruct the Oakdale Mall's entrances, parking areas and internal traffic patterns to accommodate phase 1 work. Phase 2 would be constructed in 1993.

Respondent decided to proceed with the project and held a public hearing on April 20, 1988. After respondent and representatives from DOT, Wegmans and the BMTS made statements in favor of the project, petitioner outlined its reasons for opposition. Petitioner claimed that, by making a $1.5 million commitment to the total cost of the project, Wegmans was improperly inducing respondent to condemn its property for Wegmans' benefit. Further, petitioner claimed that respondent's acceptance of Wegmans' $1.5 million offer, which petitioner claimed was a unilateral contract, constituted improper private bargaining. On May 3, 1988, respondent decided that the project was for the public benefit and should be accepted. Accordingly, respondent's Board of Trustees passed resolutions (1) to condemn the necessary private property, including petitioner's property, (2) to accept the offer of Interstate and Three Broome for the contributions of land, roadwork and $100,000, and (3) to accept Wegmans' offer of $1.5 million.

On June 7, 1988, pursuant to EDPL 207, petitioner commenced this proceeding in this court to challenge respondent's determination to condemn its property. Specifically, petitioner alleges that respondent's determination is null and void because (1) it was not made in accordance with procedures required by EDPL article 2 (EDPL 207 [C] [3]), (2) the acquisition does not serve a public use (EDPL 207 [C] [4]), (3) it was contrary to the Federal and State Constitutions (EDPL 207 [C] [1]), and (4) the acquisition is outside respondent's jurisdiction or authority (EDPL 207 [C] [2]). Respondent answered, claiming that it acted properly pursuant to the appropriate provisions of the EDPL. It further asserted that the private contributions were proper and offered in an effort to permit the project to proceed immediately rather than waiting until 1992.

Petitioner's main complaint concerning procedural irregularities is that the hearing was invalid because respondent

refused to provide full and complete information concerning the project's funding and the donations by Interstate and Three Broome. Petitioner also contends that although the EDPL provides for impartiality in condemnation determinations, the effect of the inducement and bargaining by Wegmans and Interstate completely undermined respondent's impartiality. We disagree.

The principal purpose of EDPL article 2 "is to insure that [a condemnor] does not acquire property without having made a reasoned determination that the condemnation will serve a valid public purpose" *(Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417-418). Here, respondent held a public hearing after publishing appropriate notices in the local newspaper as required by the EDPL. Respondent's counsel gave the history of the Oakdale project area, set forth the studies and recommendations by the Task Force, the BMTS and DOT, and outlined the effect of the proposed condemnations. In reviewing the studies, respondent noted that alternative locations existed for some of the changes and it recited the possible options. After respondent presented its report, representatives of the BMTS and DOT presented statements in full support of the proposed project. A representative of Wegmans also presented a supportive statement wherein he specifically stated that Wegmans would contribute $1.5 million to the project. Petitioner presented a statement challenging the proposed funding of the project. This record establishes that respondent made its determinations and findings in accordance with EDPL article 2.

We find no merit to petitioner's complaint that its representative was not allowed to cross-examine respondent's Mayor and counsel. The statute does not provide for such adversarial proceedings. To be sure, the Court of Appeals has stated that "nothing in article 2 of the EDPL requires a trial-type hearing to challenge a tentative decision to condemn" *(Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 424, *supra).* In any event, petitioner did receive an answer to its primary question regarding who would pay for the acquisition or, more specifically, how much Wegmans was paying. Accordingly, we conclude that respondent complied with the procedures in EDPL article 2.

Next, petitioner claims that the taking of the property here was not for a public use but, rather, for Wegmans' private benefit. While we agree with petitioner that the show-

ing of a public use is a prerequisite to the exercise of the right of eminent domain, we disagree with its contention that Wegmans' offer of $1.5 million to the project was not for a public use but, rather, for Wegmans' benefit. The term public use "is broadly defined to encompass any use which contributes to the health, safety, general welfare, convenience or prosperity of the community" *(Matter of Byrne v New York State Off. of Parks, Recreation & Historic Preservation,* 101 AD2d 701, 702). The record clearly indicates that respondent's taking of property for the proposed project was for a public use. Specifically, the studies by DOT, the BMTS and the Task Force reveal that since the Oakdale Mall was built in 1973 and 1974, Harry L. Drive has become heavily congested and unsafe. All three studies came to the same conclusions: that the most serious threat to the area's desirability was traffic congestion, that Harry L. Drive had to be widened, that additional turning lanes had to be installed and that a four-way intersection had to be constructed. As each study clearly indicated, the proposed project contributed to the health, safety and general welfare of the community.

Respondent does not deny that the construction of the four-way intersection will benefit Wegmans. However, that benefit is clearly incidental to the public benefit as explicitly stated in the three reports made over the past 10 years. It is settled that "an incidental private benefit will not invalidate the public use" *(Rodrigues v Town of Beekman,* 120 AD2d 724, *appeal dismissed* 69 NY2d 822; *see, Yonkers Community Dev. Agency v Morris,* 37 NY2d 478, 482, *appeal dismissed* 423 US 1010). In addition, Wegmans' contribution to the project does not convert the public purpose into a private one *(see, Rodrigues v Town of Beekman, supra,* at 725; *see also,* 51 NY Jur 2d, Eminent Domain, § 26, at 57).

■ We also reject petitioner's argument that the proceeding was not in conformity with the Federal and State Constitutions. It has been held that the procedures outlined in the EDPL satisfy both the procedural and substantive due process requirements of the Federal and State Constitutions *(see, Village Auto Body Works v Incorporated Vil. of Westbury,* 90 AD2d 502, 503; *First Broadcasting Corp. v City of Syracuse,* 78 AD2d 490, 494-495). These requirements were satisfied as applied in this case for, as discussed above, petitioner was afforded procedural due process by respondent's compliance with each and every requirement of EDPL article 2, and respondent's actions are reasonably related to the proper

governmental purpose of providing for the health and safety of its citizens, thereby satisfying substantive due process.

Lastly, we reject petitioner's contention that when respondent "contracted" with Wegmans to condemn its land by accepting Wegmans' offer of $1.5 million, it did so without express statutory authority and, therefore, proceeded in excess of its authority and jurisdiction. The only issue that can be addressed in this proceeding is whether the proposed acquisition is within respondent's statutory authority (EDPL 207 [C] [2]). As demonstrated in respondent's determinations and findings, the decision to condemn clearly was based on a public need and supported by comprehensive studies. While we hold that petitioner's allegation concerning Wegmans' monetary contribution is not a proper subject for this court's review, we are of the view that the Wegmans' contribution did not turn the public project into a private one. Respondent merely accepted an offer from Wegmans to aid in a project which studies done over a period of 10 years concluded was for the public necessity and convenience. Further, the Task Force and the BMTS recommendations were made long before Wegmans owned the land. Accordingly, since the altering of Harry L. Drive is for a public use and purpose and respondent has the statutory authority to widen the road, create the proposed four-way intersection and condemn any property needed to carry out the project (see, General Municipal Law § 74), the proposed acquisition is within respondent's statutory jurisdiction and authority.

MIKOLL, YESAWICH, JR., LEVINE and HARVEY, JJ., concur.

Determination confirmed and petition dismissed, without costs.