[848 NYS2d 214]

In the Matter of ASPEN CREEK ESTATES, LTD., Petitioner, v TOWN OF BROOKHAVEN et al., Respondents.

Second Department, December 4, 2007

## APPEARANCES OF COUNSEL

*Ruskin Moscou Faltischek, P.C.*, Uniondale (*Mark S. Mulholland* and *Douglas Cooper* of counsel), for petitioner.

*Harvey B. Besunder, P.C.*, Islandia (*Harvey B. Besunder* of counsel), for respondents.

### OPINION OF THE COURT

KRAUSMAN, J.

The subject of this condemnation proceeding is a 39-acre parcel of farmland (hereinafter the property) which the petitioner Aspen Creek Estates, Ltd. (hereinafter Aspen Creek),

purchased for residential development. The property is located in a portion of the Town of Brookhaven known as the "Manorville Farmland Protection Area." The Manorville Farmland Protection Area is an approximately 500-acre working farm belt which has been described as "the largest and most contiguous belt of productive agricultural land" remaining in the Town. At issue in this proceeding is whether the Town's decision to exercise its power of eminent domain to condemn the property in order to preserve its use as farmland serves a legitimate public purpose, or is instead a pretext to improperly confer benefits upon private persons. Contrary to the conclusion reached by our dissenting colleague, we believe that the record fully supports the Town's decision to condemn the property for a public purpose as part of its continuing efforts to preserve the rural character of the Manorville Farmland Protection Area and ensure that the historical use of the land is not extinguished by development. Accordingly, we confirm the determination acquiring the property by condemnation.

On January 24, 2006, the Town Board of the Town of Brookhaven (hereinafter the Board) took the first step in the condemnation process by adopting a resolution expressing its intent to acquire the property and its development rights in order to ensure that it be "maintained for farming and not developed." In accordance with the requirements of the Eminent Domain Procedure Law, the resolution scheduled a public hearing on the proposed acquisition, and directed the Town Clerk to publish notice of the hearing in two local newspapers (see EDPL 201, 202).

At the ensuing public hearing conducted on March 7, 2006, town representatives described the purpose of the condemnation and the Town's prior attempts to acquire the property through a negotiated sale. Members of various civic associations, neighboring property owners, local residents, and Aspen Creek's president were then afforded an opportunity to express their views. According to testimony presented at the hearing, the subject property was continuously farmed for over a century. In the late 1800s the property was a hay farm, and in more recent years a variety of crops have been grown on the land, including strawberries, corn, potatoes, cauliflower, and string beans. One of the area residents attending the hearing noted that the property was particularly beautiful in the fall, when pumpkins and sunflowers were harvested. The farmhouse on the property predates 1858, and has been recommended for landmark designation by the Town's Historic District Advisory

Committee. An adjacent landowner, John Kennedy, leased the subject property and farmed it for approximately 23 years, until it was sold to Aspen Creek and an action for ejectment was commenced to remove him from the property (*see Aspen Cr. Estates, Inc. v Kennedy*, 32 AD3d 870 [2006]).

The hearing testimony further reveals that the Town's initial efforts to acquire the property began on January 14, 2003, when the Town's Open Space Environmental Bond Act Committee approved the purchase of the development rights to the property from its former owners. However, at that time Aspen Creek's president, Anthony Kaywood, was already in the process of negotiating the purchase of the property. On February 6, 2003, when Kaywood appeared before a Manorville civic group to discuss a proposal to subdivide and build 19 houses on the property, he was advised "that the Town was interested in preserving the entire area and that that parcel was a priority." Although the Town entered into negotiations with the former owners of the property, Aspen Creek outbid the Town, and on March 9, 2004, it purchased the property for $1.4 million. Shortly thereafter, the Town entered into negotiations to purchase the development rights to the property from Aspen Creek. After Aspen Creek rejected the Town's initial offer as too low, the Town increased its offer to $3.52 million based upon the highest property appraisal it had received. In January 2006 the Town increased its offer for the property's development rights to $4.004 million. In addition, according to the Town Attorney, in an effort to reach a compromise, the parties discussed allowing three lots to be developed so that Kaywood and his two partners could build houses for themselves on the property. After these attempts to negotiate a purchase of the property's development rights proved unsuccessful, the Town began the process of acquiring ownership of the land and development rights through the exercise of eminent domain.

Testimony was also presented at the hearing which demonstrates that the Town's efforts to preserve Manorville's farming heritage was not limited to the acquisition of the subject property. At the time of the hearing, the Town, in partnership with the County of Suffolk, had acquired the development rights to four farms in the Manorville protection area, including the Hoschler Farm located directly to the east of the property. The Town and County shared in the $8.27 million cost of acquiring the development rights to these four farms, thus preserving approximately 112 acres of farmland.

Shortly after the hearing, the Town's Division of Environmental Protection completed an environmental assessment form (hereinafter EAF) determining that the proposed condemnation was an unlisted action and would not have a significant impact on the environment, thereby warranting issuance of a negative declaration pursuant to the State Environmental Quality Review Act (hereinafter SEQRA).

At a meeting on March 21, 2006, the Board voted to acquire title to the property and its development rights through the exercise of eminent domain, and adopted the Division of Environmental Protection's recommendation to issue a negative declaration. In approving the condemnation, the Board declared that the property was being acquired, among other things, to preserve open space and agricultural resources, protect and promote continuation of agriculture in the Town, ensure the continued sale of fresh, locally grown produce, and prevent conflicts between residential homeowners and adjacent farmers. The Board also found that preserving the property would "have a positive impact on the environment and surrounding community by ensuring the protection of scenic vistas and the rural character of the area, and helping to achieve the protection of the 500-acre Manorville Farm Protection Area, a high priority preservation target."

Aspen Creek thereafter commenced this proceeding to review the Town's determination, alleging, inter alia, that the Town had failed to comply with EDPL requirements that a property owner be given notice of the purpose of the condemnation and a reasonable opportunity to testify and present evidence at the hearing, and that application of the EDPL was unconstitutional as applied to Aspen Creek because it did not afford it an opportunity to cross examine the proponents of the condemnation. In addition, Aspen Creek claimed that the Board had failed to fulfill its obligations under SEQRA in issuing a negative declaration concluding that the condemnation would have no significant environmental impact. Aspen Creek further claimed that the Town's determination violated the EDPL because its true intent was to take the subject property to lease to private farmers.

The principal purpose of EDPL article 2 is to ensure that a governmental entity does not acquire property without having made a reasoned determination that the condemnation will serve a valid public purpose (see EDPL 201; *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417-418 [1986];

*Matter of Woodfield Equities LLC v Incorporated Vil. of Patchogue*, 28 AD3d 488, 489 [2006]). Although a party aggrieved by the condemnor's determination and findings may seek judicial review, the scope of that review is limited by EDPL 207 to: (1) whether the proceeding was in conformity with the Federal and State Constitutions, (2) whether the proposed acquisition is within the condemnor's statutory jurisdiction or authority, (3) whether the condemnor's determination and findings were in accordance with the procedures set forth in EDPL article 2 and SEQRA, and (4) whether a public use, benefit, or purpose will be served by the proposed acquisition. "If an adequate basis for a determination is shown and the objector cannot show that the determination was without foundation, the agency's determination should be confirmed" (*Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 720 [1989] [internal quotation marks omitted]; *see Matter of Butler v Onondaga County Legislature*, 39 AD3d 1271, 1272 [2007]; *Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency*, 301 AD2d 292, 300 [2002]). A property owner seeking to challenge a municipality's finding that a proposed condemnation will further a public use has the burden of establishing that the determination does not rationally relate to a conceivable public purpose (*see Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d at 720; *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 420-421).

Turning first to Aspen Creek's procedural challenges, we reject its contention that it did not receive adequate notice of the public hearing, and that its president Anthony Kaywood was denied a reasonable opportunity to testify and present evidence. EDPL 202 (A), which requires the condemnor to state the purpose of the hearing in its notice, does not obligate it to describe every aspect of the project and its implementation (*see Matter of Rocky Point Realty, LLC v Town of Brookhaven*, 36 AD3d 708 [2007]; *Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency*, 301 AD2d 292 [2002]). Here, the published notice stating that the Town sought to acquire the property and development rights to ensure its continuation as farmland was sufficient to satisfy the requirements of EDPL 202 (A). Furthermore, although the separate notice sent to Aspen Creek was less detailed, the record demonstrates that Kaywood was fully aware of the Town's stated purpose for seeking condemnation, and thus had an opportunity to prepare for the hearing. Moreover, while the Board limited speaking time at

the hearing because of the large number of people who wished to be heard, the record reflects that Kaywood was given considerably more time to present his views than other speakers. There is also no evidence that Aspen Creek was denied an opportunity to supplement Kaywood's presentation by submitting written materials after the hearing.

We also find no merit to Aspen Creek's argument that the EDPL is unconstitutional as applied in this case because the statute does not give parties adversely affected by a proposed taking the right to an adversarial hearing at which government officials can be cross examined. The procedures outlined in the EDPL have been held to satisfy the due process requirements of the Federal and State Constitutions (*see Matter of Waldo's, Inc. v Village of Johnson City*, 141 AD2d 194 [1988], *affd* 74 NY2d 718 [1989]; *Village Auto Body Works v Incorporated Vil. of Westbury*, 90 AD2d 502, 503 [1982]; *First Broadcasting Corp. v City of Syracuse*, 78 AD2d 490, 494-496 [1981]), and Aspen Creek's allegations that the proponents of the condemnation were, in essence, biased and/or acting in bad faith does not warrant judicially transforming the public hearing required by statute into a full-fledged adversarial proceeding (*see Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d at 722). Indeed, as the Court of Appeals observed in rejecting a similar argument in *Matter of Waldo's, Inc. v Village of Johnson City* (74 NY2d at 719), "[a]t the public hearing petitioner was free to present any evidence to undermine the bona fides of the legislative body's decision-making process. Having completely failed to do so, petitioner cannot now be heard to complain."

Furthermore, the petitioner's contention that the Town failed to comply with the requirements of SEQRA in adopting its findings and determination is without merit. SEQRA requires that agencies "minimize or avoid adverse environmental effects" when considering proposed actions (ECL 8-0109 [1]; *see* 6 NYCRR part 617). In the EAF prepared in connection with the condemnation, no adverse environmental impacts were identified, and Aspen Creek has failed to assert any significant potential for environmental harm that might result from condemnation. Although Aspen Creek notes that the property is located in a Compatible Growth Area of the Central Pine Barrens Region, in considering the potential environmental impact of the proposed condemnation it cannot be overlooked that the Town's purpose in acquiring the property is to continue the farming use that has been in place for generations. Thus, as

noted by the Town in its negative declaration, the acquisition will actually have a beneficial impact on the environment. Under these circumstances, the issuance of a negative declaration was appropriate and the preparation of an environmental impact statement was unnecessary (*see* 6 NYCRR 617.7 [a] [2]; *Matter of Wells v Board of Trustees of Inc. Vil. of Northport*, 40 AD3d 652 [2007]; *Matter of Rocky Point Realty, LLC v Town of Brookhaven*, 36 AD3d 708 [2007]; *Matter of Woodfield Equities LLC v Incorporated Vil. of Patchogue*, 28 AD3d 488 [2006]; *Matter of McCarthy v Town of Smithtown*, 19 AD3d 695 [2005]).

◼ Turning next to the issue of whether the condemnation will serve a public purpose, we believe that it is clear, as our dissenting colleague concedes, that the Town's stated reasons for acquiring the property—preserving farmland and maintaining open space and scenic vistas—are all legitimate public purposes. "What qualifies as a 'public purpose' or 'public use' is broadly defined as encompassing virtually any project that may confer upon the public a benefit, utility, or advantage" (*Matter of 49 WB, LLC v Village of Haverstraw*, 44 AD3d 226, 235 [2007]). These terms encompass "any use which contributes to the health, safety, general welfare, convenience or prosperity of the community" (*Greenwich Assoc. v Metropolitan Transp. Auth.*, 152 AD2d 216, 201 [1989]; *see Matter of Rocky Point Realty, LLC v Town of Brookhaven*, 36 AD3d 708 [2007]). Clearly, the preservation of farmland confers a benefit upon the public, since it enables residents of the Town to enjoy locally grown produce and scenic views. Indeed, the proposed condemnation had the overwhelming support of almost all of the area residents and civic association members who spoke at the hearing. Many of these individuals spoke eloquently about the beauty of the property, the area's "pristine landscape," and the desirability of maintaining Manorville's rich farming heritage for future generations. Another speaker pointed out, in a letter read at the hearing, that "land suitable for farming is an irreplaceable natural resource with soil and topographic characteristics that have been enhanced by generations of agricultural use. When such land is converted to residential or other more developed uses that do not require those special characteristics, a critical community resource is permanently lost to the citizens of the area and the county at large."

Furthermore, the preservation of farmland is in keeping with the declared public policy of this State to "promote, foster, and encourage the agricultural industry" (Agriculture and Markets

Law § 3), and to acquire interests and rights in real property for the preservation of open space and enhancement of natural resources, including agricultural lands (*see* General Municipal Law § 247 [1]). So important is the protection of open spaces and natural resources to residents of the Town that in 2002 they overwhelmingly voted for a bond act to provide $20 million for the preservation of open space and environmentally important lands. Town residents subsequently approved the Clean Water Open Space Bond Act of 2004, authorizing the issuance of up to $100 million in bonds "to finance the acquisition of interests or rights in real property in the Town for the preservation of open space, farmland and wildlife habitats."

Despite the fact that preservation of farmland undoubtedly provides a benefit to the public, Aspen Creek maintains that the condemnation of its property does not pass constitutional muster because the true purpose of the taking is to bestow a private benefit on certain individuals. In this regard, Aspen Creek asserts that the Town is trying to take its private property to allow a private individual other than the present owner to use it as a farm, and/or to block further development in order to increase the value and appeal of already existing homes. To the extent that Aspen Creek appears to be questioning the motives of members of the Board and the many citizens who spoke in favor of the proposed condemnation at the public hearing, its allegations find no factual support in the record and are insufficient to demonstrate bad faith (*see Matter of 49 WB, LLC v Village of Haverstraw*, 44 AD3d at 238-239; *Matter of Woodfield Equities LLC v Incorporated Vil. of Patchogue*, 28 AD3d 488 [2006]). Moreover, the mere fact that condemnation will provide incidental benefits to private individuals does not invalidate the condemnor's determination as long as the public purpose is dominant (*see Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d at 721; *Matter of 49 WB, LLC v Village of Haverstraw*, 44 AD3d at 238; *Matter of Glen Cove Community Dev. Agency [Ardaas, Inc.]*, 259 AD2d 750 [1999]).

Recently, in *Kelo v New London* (545 US 469 [2005]), the United States Supreme Court upheld the condemnation of a number of parcels which were located in a 90-acre area that had been targeted for development "to revitalize an economically distressed city" (*id*. at 472). The development agent of the City of New London, a nonprofit entity, proposed leasing some of the parcels to private developers in exchange for their agreement to develop the land according to the terms of the development

plan. In reaching its decision to uphold condemnation, the United States Supreme Court acknowledged that the City was forbidden from taking the petitioners' land for the purpose of conferring a private benefit on a particular private party, or taking the property "under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit" (*id.* at 478). However, the United States Supreme Court concluded that the taking of the petitioners' properties pursuant to a " 'carefully considered' development" plan which the City believed would provide appreciable benefits to the community satisfied the public use requirement of the Fifth Amendment (*id.*). The United States Supreme Court also rejected the petitioners' argument that using eminent domain for economic development impermissibly blurs the boundary between public and private takings, observing in this regard that "the government's pursuit of a public purpose will often benefit individual private parties" (*id.* at 485).

Aspen Creek relies upon *Kelo* to argue that the condemnation of its property either serves no public benefit, or is a pretext to benefit private individuals, because it was not part of a carefully considered development plan. However, in contrast to *Kelo*, this matter does not involve a proposed taking for economic development, which arguably might need to be justified by a formalized development plan. Rather, as the Town points out, the purpose of the condemnation of Aspen Creek's property is the preservation of farmland, and the concomitant preservation of open space and scenic vistas. Neither *Kelo,* nor this Court's recent decision in *Matter of 49 WB, LLC v Village of Haverstraw,* upon which our dissenting colleague also relies, requires that a proposed condemnation for the preservation of farmland be part of a comprehensive development plan.

In any event, while it does not appear from the record that the precise boundaries of the Manorville Farmland Protection Area have been formally defined by the Town, it is clear from the comments made by various speakers at the hearing that the desirability of preserving farmland in Manorville has indeed been recognized by civic associations and public officials. A plan prepared by the Manorville Taxpayers Association in 1993 set preservation of the remaining farms in the hamlet as a goal, and stated that the "area of preservation would include the 300+ agricultural farmland acres between the north side of South Street and the south side of the [Long Island] Expressway," as well as farmlands bordering Sunrise Highway. Further-

more, the Town's Director of Environmental Protection explained at the hearing that what was referred to as the Manorville Farm Protection Area was approximately 500 contiguous acres of productive farmland bracketed by the Long Island Expressway and South Street. Moreover, it is difficult to perceive how the existence of a genuine desire to preserve the land lying within this working farm belt can be gainsaid in light of evidence at the hearing that the Town and County had recently expended over $8 million to acquire the development rights to four farms in the Manorville protection area, including a farm located directly to the east of the property.

The fact that the Town entertained the possibility of allowing the three principals of Aspen Creek to build individual residences on the property in an effort to achieve a negotiated sale does not cast doubt on the "true motivation" of town officials. As the dissent recognizes, it is obvious that a voluntarily negotiated sale is preferable to the exercise of eminent domain, and the Town's willingness to consider this very limited residential development on the property in an effort to achieve a compromise does not undercut the legitimacy of its farmland preservation goal. Although the dissent places great emphasis on the Town's initial failure to match Aspen Creek's $1.4 million offer for the property in 2003, and its subsequent willingness to increase its offer, it should be noted that the enactment of the 2004 bond act apparently placed a far greater amount of funds at the Town's disposal. It is also significant to note that the increase in the Town's offering price was based upon the appraised value of the property, and was not simply arbitrary.

Although the record is completely devoid of evidence pertaining to how the Town intends to use the property after the acquisition, the possibility that the Town may sell or lease the land to a farmer does not make the proposed condemnation a pretext for improperly conferring a private benefit. As noted, the land had been continuously farmed for more than a century before Aspen Creek purchased it for development purposes, with full knowledge that it had been targeted for preservation. Since allowing farming to continue on the property is fully consistent with the purpose of this condemnation, the fact that one or more individual farmers may benefit is merely incidental, and does not render the public benefit to be achieved by condemnation illusory. The record is also completely devoid of evidence to support Aspen Creek's theory that the proposed condemnation was motivated by a desire to increase the prop-

erty value of existing homes in Manorville, and, in any event, any increase in property values would similarly be an incidental benefit.

Finally, we conclude that Aspen Creek has failed to sustain its burden of establishing that the taking is excessive. "[I]t is generally accepted that the condemnor has broad discretion in deciding what land is necessary to fulfill [the public] purpose" (*Matter of Rafferty v Town of Colonie*, 300 AD2d 719, 723 [2002]; *see Matter of Butler v Onondaga County Legislature*, 39 AD3d 1271 [2007]; *Matter of Stankevich v Town of Southold*, 29 AD3d 810 [2006]; *Matter of Gyrodyne Co. of Am., Inc. v State Univ. of N.Y. at Stony Brook*, 17 AD3d 675 [2005]). As pointed out at the hearing, the property lies within a large, contiguous tract of working farmland, and permitting any significant residential development defeats the Town's aim of preserving this entire area. Thus, the Town's determination that acquisition of the entire parcel was necessary to achieve the public purpose of the condemnation was rational, and there is no basis upon which to disturb it. Accordingly, the determination is confirmed, the petition is denied, and the proceeding is dismissed.

LIFSON, J. (dissenting). Aspen Creek Estates, Ltd. (hereinafter Aspen Creek or the petitioner) owned about 39.15 acres (hereinafter the property) located north of South Street and east of Wading River Road in the Town of Brookhaven. Aspen Creek acquired the property in 2004 for a price of about $1.4 million. According to the "Notice to property owners," the Town sought to acquire the property

> "[t]o preserve open space and agricultural resources; to preserve prime agriculture in the Town which is an important component of the local economy; to ensure the retention of scenic vistas; to protect the bucolic and rural character of the subject property, adjoining properties, and the Manorville Farm Protection Area; to ensure the continued sale of fresh, locally-grown produce; to prevent conflicts between residential homeowners and adjacent farmers; and to help ensure the preservation of the Manorville Farm Protection Area, a high priority preservation target which contains the largest contiguous belt of working farmland left in Brookhaven Town."

At the ensuing public hearing, testimony was heard as to the

public necessity of acquiring the property and the Town's three-year attempt to acquire the property through a negotiated purchase. The last offer rejected by the petitioner included a proposed purchase price of $4.004 million, while allowing the retention of three building lots for development for the petitioner's principals as their own homes. The Town similarly had attempted to acquire the property from the prior owner, but the petitioner had offered a higher price and, thereby, acquired the property.

In opposition, the petitioner presented proof which indicated that it had submitted no less than 30 development alternatives, all of which had been rejected by the Town. In one proposal, the petitioner submitted a plan which preserved two thirds of the property as farmland and confined development to the remaining one third of the property.

Based on this record, the Town issued a negative declaration under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) and directed the Town Attorney to acquire the property by condemnation. That decision allegedly was based on the Town's perfunctory conclusion that the proposal was an unlisted action, did not involve any physical activity, and was not anticipated to have a significant impact on the environment, public health, or the character of the community and that the condemnation "will preserve and protect ecologically important land and farmland . . . and would thus have a beneficial effect on the environment."

The instant petition to annul the negative declaration under SEQRA and the respondents' determination condemning the property alleges that the Town acted in bad faith in condemning the property, doing so only to avoid having the Town Planning Board ordered to pass on subdivision of the property via an CPLR article 78 proceeding. The petition also alleges that the condemnation was effected in violation of the Constitutions of the United States and the State of New York, that the condemnation procedure was flawed, and that the condemnation was approved without proper environmental review. The respondents have denied the allegations of the petition.

For the reasons stated below, I believe the petition should be granted and the determination and findings of the Town of Brookhaven dated March 21, 2006, authorizing the condemnation of the subject parcel, should be annulled. At the outset, I concur with the majority's conclusion that the petitioner's procedural arguments are without merit. Similarly, I agree that

the purported public purpose alleged to be advanced by the condemnation, to wit, the preservation of farmland, open spaces and scenic vistas would, if applied in good faith, advance a recognized public policy of the State of New York and the County of Suffolk (see e.g. General Municipal Law § 247; Agriculture and Markets Law § 3; Suffolk County Farmland Preservation Law [1974]; Suffolk County Agricultural Preservation Plan [2006]).

The guiding legal principles with respect to the exercise of the State's power of eminent domain were recently revisited in *Kelo v New London* (545 US 469 [2005]) and its progeny. As *Kelo* clearly states, the taking of one citizen's property for the purpose of conferring a private benefit on another citizen is violative of the Constitution of the United States and is therefore forbidden except where such benefit is merely incidental to some other bona fide public purpose expressed through a recognizable plan (see *Kelo v New London*, 545 US at 477). *Kelo* also prohibits the utilization of a bona fide public purpose as a rationale or pretext for a taking designed to benefit private citizens (see *Kelo v New London*, 545 US at 478). This Court has recently expanded the *Kelo* rationale to require careful scrutiny in determining whether the taking was pretextual, especially where the taking is for ephemeral purposes such as alleged economic development (see *Matter of 49 WB, LLC v Village of Haverstraw*, 44 AD3d 226 [2007]).

In both *Kelo* and *49 WB, LLC,* the proposed taking was to advance economic development in an urbanized setting. In *Kelo,* the United States Supreme Court placed great weight on a record that clearly demonstrated that the taking was pursuant to a comprehensive master development plan. In *49 WB, LLC,* this Court determined that, while the asserted purpose of the taking could be rationalized as advancing a recognized public policy (i.e. economic development), in actuality the taking was done primarily and illegally to advance the economic needs of a particular developer to satisfy that developer's obligation to provide a threshold amount of affordable housing imposed by an earlier contract with the municipality. In the present case, the proposed taking occurs in a rural setting where the avowed public purpose is, depending on one's point of view, the prevention of development of vacant land and/or the preservation of dwindling acres of farmland. Notwithstanding that this taking is the polar opposite confronting this Court in *Matter of 49 WB, LLC v Village of Haverstraw,* applying the same rationale used therein to this

record leads me to the inescapable conclusion that this taking was pretextual and is, therefore, forbidden by the Federal Constitution (*see Kelo v New London*, 545 US 469 [2005]).

I conclude that the rationale for the proposed taking is pretextual for the following reasons. First, while there are several references to a Manorville Farmland Protection Area in the record, no town ordinance or formalized plan for the alleged preservation of the area in which the property is located is set forth. Instead, the respondents rely on vague references to such designation as early as 1993 without being able to explain what the detailed plan was or is. The fact that the Town's Open Space Committee approved the "protection" of the area in 2003 or that bond proceeds were used to acquire parcels of lands or development rights within such designated area is not proof of a coherent plan for preservation, or that the public acquisition of the entire tract (i.e. the property) and its use as farmland is essential to the furtherance of such an alleged plan.

Second, assuming that a valid plan existed for the *acquisition* of the property, the Town's actions on this matter seem at great variance with what that plan purports to be. The Town allegedly endeavored to acquire the land for farmland preservation purposes in 2003, apparently while it was still utilized for agricultural purposes, yet failed to match Aspen Creek's offer of $1.4 million. As the New York State Farm Bureau's Director of Public Policy indicated at the hearing, acquisition of development rights of an existing farm via arms-length negotiations is preferable to condemnation of the property in toto and is the general norm for farmland preservation. That view was supported by the Long Island Builders Association.

Third, the willingness of the Town to increase its offer nearly 300% in less than two years, and the concomitant loss of millions of dollars for further acquisitions of property or development rights within the alleged targeted preservation area, raises questions as to the motivations of those involved as well as the propriety of the transactions (*see e.g. State of New York v Grecco*, 43 AD3d 397 [2007]; *State of New York v Grecco*, 21 AD3d 470 [2005]).

Fourth, that circumstance is further magnified by the fact that testimony was offered at the hearing that any residential development within the Manorville Farmland Protection Area was incompatible with any agricultural use. Yet, contrary to its alleged public purpose, the Town had indicated a willingness to allow residential development of some of the property for homes

of the principals of Aspen Creek. The difference between that plan and one of the plans proposed by the petitioner, encompassing the preservation of about two thirds of the property as open space or farmland (without any cost to the public), is merely a matter of degree. However, the loss of nearly $4 million for the potential preservation of the remainder of the parcels within the alleged Manorville Farmland Protection Area is inexplicable and calls into question the true motivation of the respondents.

Lastly, the fact that the property was taken while it was not in agricultural use is of no small moment. That circumstance clearly shows that the alleged "preservation" of the agricultural use of the parcel can no longer be accomplished without the rental of the property to a "farmer." That "farmer," whether the previous tenant, as asserted in petitioner's brief (and the pool of potential farmers appears to be extremely limited), or another, would be the sole beneficiary of the economic utilization of the property. Thus, I conclude that the potential benefit to the public is so disproportionate and ephemeral when compared to the actual benefit conferred on the tenant that the proposed taking cannot be justified as an efficient advancement of the stated public policy.

Because I believe that close scrutiny of the rationale offered by the Town offers illusory benefits to the public and is a mere pretext for an impermissible taking (*see Matter of 49 WB, LLC v Village of Haverstraw*, 44 AD3d 226 [2007]), I respectfully dissent.

CRANE, J.P. and FISHER, J., concur; LIFSON, J., dissents and votes to grant the petition and annul the determination in a separate opinion.

Adjudged that the determination is confirmed, with costs, the petition is denied, and the proceeding is dismissed.