GREENWICH ASSOCIATES, a New York Partnership, Petitioner, v METROPOLITAN TRANSPORTATION AUTHORITY, Respondent.

LEX-43RD, INC., Petitioner, v METROPOLITAN TRANSPORTATION AUTHORITY, Respondent.

In the Matter of REGENCY-LEXINGTON PARTNERS, Petitioner, v METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents.

First Department, December 7, 1989

APPEARANCES OF COUNSEL

*Donald N. David* of counsel *(Howard E. Cotton, Carey Wagner, Susan M. Standish* and *John G. Sinadinos* with him on the brief; *Dreyer & Traub,* attorneys), for Greenwich Associates and another, petitioner.

*Charles S. Webb III* of counsel *(Bernard D'Orazaio* with him on the brief; *Berger & Steingut,* attorneys), for Lex-43rd Street, Inc., petitioner.

*Anthony P. Semancik* of counsel *(Susan E. Weiner,* attorney), for respondents.

**OPINION OF THE COURT**

KASSAL, J.

■ In these consolidated original proceedings, brought pursuant to EDPL 207, petitioners challenge a determination and finding approved and adopted by respondent Metropolitan Transportation Authority (MTA) on November 21, 1988, which authorized the condemnation of a certain parcel of real property adjacent to Grand Central Terminal (the Terminal) in the Borough of Manhattan. The determination is confirmed and the petitions are dismissed, without costs.

The subject property, which is located in a portion of Tax Block 1280, Lot 54, and known by the street address of 416 Lexington Avenue (the property), is required by respondent subsidiary of MTA, Metro-North Commuter Railroad Company (Metro-North or, collectively, MTA) to implement a project known as the Grand Central Terminal Improvement Project. Specifically, the acquisition is for the stated purpose of improving delivery of materials and handling of solid waste in the Terminal by restoring a 15-foot-wide driveway over which the MTA currently has a nonexclusive easement, to its former width of 45 feet. The restoration and reconstruction will necessitate the demolition of a two-story building constructed in the mid-1970's, which had been used and operated as a savings bank, and was being converted into a multilevel food court for several "fast food" restaurants.

Petitioners Greenwich Associates (Greenwich) and Lex-43rd, Inc. (Lex-43rd) are the owner and tenants, respectively, of the property, and petitioner Regency Lexington Partners (Regency) is the tenant of the New York Grand Hyatt Hotel, which is located immediately south of the property. In challenging the MTA's determination and findings, petitioners

argue that the proposed acquisition is attended by constitutional and statutory violations, including lack of proper notice to the public, failure to serve a public purpose, and noncompliance with the State Environmental Quality Review Act (SEQRA). Upon an examination of the record, we conclude that petitioners' claims are without factual or legal support.

Initially, we note that the scope of judicial review is limited under EDPL 207 (C) to consideration of whether:

"(1) the proceeding was in conformity with the federal and state constitutions,

"(2) the proposed acquisition is within the condemnor's statutory jurisdiction or authority,

"(3) the condemnor's determination and findings were made in accordance with procedures set forth in this article, and

"(4) a public use, benefit or purpose will be served by the proposed acquisition."

The Court of Appeals has held that this limited judicial review does not contemplate a de novo consideration of the issues, or a determination as to whether the condemnor's conclusion is supported by substantial evidence. *(Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 418.) Rather, the court's review is confined to whether the procedural requirements of EDPL article 2 were met and, with respect to the substantive determinations and findings, whether there exists a rational factual basis therefor. *(Long Is. R. R. Co. v Long Is. Light. Co.,* 103 AD2d 156, 168, *affd* 64 NY2d 1088.)

Petitioners contend that the MTA failed to comply with the procedural notice requirements of EDPL 202 (A) which provides, in pertinent part, as follows: "Where a public hearing is required by this article the condemnor shall give notice to the public of the purpose, time and location of its hearing setting forth the proposed location of the public project including any proposed alternate locations, at least ten but no more than thirty days prior to such public hearing by causing such notice to be published in at least five successive issues of an official daily newspaper".

Specifically, petitioners argue that the published notice was deficient in that it described the purpose of the contemplated project as "adding this property to Grand Central Terminal * * * to provide ingress and egress to support activities at the Terminal", without referring to the demolition of the existing structure on the site, or to the MTA's plans to improve its

solid waste handling system in addition to facilitating ingress and egress to the Terminal. This claim is without merit.

First, we reject petitioner's contention that EDPL 202 (A), which requires the condemnor to state the purpose of the hearing, obligates it to describe every aspect of the project and its implementation. The published notice in this case clearly informed the public that property would be added to Grand Central Terminal "to provide ingress and egress to support activities at the Terminal", and specified the location of the project by providing tax lot and block, street address, volume of space to be acquired ("street level to approximately fifty (50) linear feet above street level"), description of improvements ("a two-story building and driveway") and proximity to other property ("adjacent to Terminal"). In addition, the public was invited to examine MTA maps for more particulars with regard to the location of the project.

Thus, the MTA's public hearing notice met the statutory requirements of EDPL 202 (A). The hearing was attended by at least 28 persons, including representatives and law firms on behalf of each of the three petitioners.

At the hearing, which was held, as noticed, on August 25, 1988, the MTA's Hearing Officer outlined, in accordance with EDPL 203, the purpose, proposed location and other pertinent data regarding the project, including the specific inadequacies of the existing delivery and removal systems for goods and materials, and the problems concerning the handling of solid waste. The record establishes that petitioners participated in the hearing, and were heard at some length both with respect to the proposed use of the space as well as the waste disposal plan, and that they and the public generally, were accorded a reasonable period of time in which to submit additional, written comments. Indeed, although the MTA set a two-week deadline for such submissions at the public hearing, it in fact accepted written responses until November 1988. During this period, approximately 100 pages of typewritten comments, including those of petitioners, were submitted and incorporated into the record now filed with this court.

Finally, we note that the MTA undertook a de novo review of the project in response to the comments received from the public, prepared and distributed new reports in connection therewith, and conducted a slide show presentation of its additional studies for petitioners and other interested parties

on November 14, 1989. In light of this record, we conclude that the petitioners' claims of violations of procedural and substantive due process rights, predicated upon inadequate notice, must be rejected.

■ Petitioners also challenge the proposed condemnation on the ground that it does not serve a public purpose, as mandated by the Fifth Amendment of the US Constitution and article I, §§ 6 and 7 of the NY Constitution, and the statutory codification thereof, EDPL 204 (B) (1). The Court of Appeals has held that, "where an agency has found a public purpose which a petitioner disputes, the agency's finding is regarded as 'well-nigh conclusive', not a question of fact for de novo determination". (*Matter of Jackson v New York Urban Dev. Corp., supra,* at 425, quoting *Berman v Parker,* 348 US 26, 32-33.) Accordingly, interference by the courts on this issue is warranted solely upon a " 'clear showing of bad faith or conduct which is irrational, baseless or palpably unreasonable' ". (*Matter of Dowling Coll. v Flacke,* 78 AD2d 551, 552, quoting *Saso v State of New York,* 20 Misc 2d 826, 829; *First Broadcasting Corp. v City of Syracuse,* 78 AD2d 490, 496.)

In the case at bar, the MTA has compiled extensive data supporting its determination of public purpose, including various studies illustrating the conditions of congestion and sanitation associated with the present system of handling of garbage and delivery of supplies in the Terminal. Among the public purposes which the MTA has determined will be served by the project are (1) the improvement of Metro-North's ability to handle deliveries to the railroad as well as to its commercial tenants; (2) the reduction of pedestrian and vehicular congestion in and around the Terminal; (3) the reduction of deliveries by hand-pushed vehicles which cause damage to architectural elements inside the Terminal; and (4) the elimination of unsanitary conditions and interference to commuters caused by the present system of moving waste through public areas of the Terminal.

The term "public use" is "broadly defined to encompass any use which contributes to the health, safety, general welfare, convenience or prosperity of the community". (*Matter of Byrne v New York State Off. of Parks, Recreation & Historic Preservation,* 101 AD2d 701, 702.) It includes the alleviation of traffic congestion (*see, Matter of Waldo's, Inc. v Village of Johnson City,* 141 AD2d 194, *mot to dismiss appeal granted* 73 NY2d 809) and encompasses protection of the Terminal's architec-

tural elements. *(See, Lubelle v City of Rochester,* 145 AD2d 954, *lv denied* 74 NY2d 601.)

Thus, the record establishes that the proposed acquisition readily meets the standard of being " 'rationally related to a conceivable public purpose' ", and, as such, warrants no interference by the court. *(Matter of Jackson v New York State Urban Dev. Corp., supra,* at 425; *see, Berman v Parker,* 348 US 26, 32-33, *supra.)*

■ With respect to petitioners' claim that the proposed project is governed by SEQRA, the Court of Appeals has held that a condemnor's compliance therewith is not subject to judicial review in an EDPL 207 proceeding, and may be reviewed only in a separate CPLR article 78 proceeding commenced in the Supreme Court. *(Pizzuti v Metropolitan Tr. Auth.,* 67 NY2d 1039, 1040-1041.) In any event, we are satisfied that the MTA's study of the environmental impact of the proposed condemnation, which is set forth in the ample record before us, meets the requirements of EDPL 204 (B) (3), and that its conclusions have a rational basis in fact. *(See, Sandpiper Constr. Co. v Siegel,* 97 AD2d 539, *lv denied* 61 NY2d 608; *Matter of Dowling Coll. v Flacke, supra,* at 552.)

We have considered petitioner's remaining contentions, and find them to be without merit.

KUPFERMAN, J. P., ROSS, ASCH and RUBIN, JJ., concur.

Proceedings pursuant to EDPL 207, dismissed, and the determination confirmed, without costs and without disbursements. Respondents' motion to supplement the record and the cross motion by petitioners Greenwich Associates and Regency-Lexington to strike part of respondents' brief are denied.