■ In the Matter of ALEXANDRA FISHER et al., Petitioners. NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Doing Business as EMPIRE STATE DEVELOPMENT CORPORATION, Respondent. [730 NYS2d 516] —Determination and Findings adopted by respondent New York State Urban Development Corporation on January 31, 2001, which found, *inter alia*, that there is a public use, benefit or purpose to support condemna-

tion of 45 Wall Street in New York County in conjunction with respondent's New York Stock Exchange Project, unanimously confirmed, the petition denied and the proceeding brought pursuant to Eminent Domain Procedure Law § 207 seeking rejection of said Determination and Findings dismissed, without costs.

Petitioners are rent stabilized tenants at 45 Wall Street, a building whose condemnation has been approved by respondent New York State Urban Development Corporation in the Determination and Findings here reviewed pursuant to Eminent Domain Procedure Law § 207. Condemnation of 45 Wall Street is sought by respondent to clear space for construction of new New York Stock Exchange facilities. Petitioners maintain, however, that respondent in its Determination and Findings has failed to identify a public use to support the proposed condemnation and that it has failed to adequately meet its obligation pursuant to New York State Urban Development Corporation Act § 10 (g) (L 1968, ch 174, § 1, as amended [McKinney's Uncons Laws of NY § 6260 (g)]) to find that there is a feasible plan for relocating persons displaced by reason of the sought condemnation.

Given the breadth with which public use is defined in the condemnation context (see, Greenwich Assocs. v Metropolitan Transp. Auth., 152 AD2d 216, 221, appeal dismissed sub nom. Matter of Regency-Lexington Partners v Metropolitan Transp. Auth., 75 NY2d 865) and the very restricted scope of our review of respondent's findings in support of condemnation (see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 425), we perceive no ground upon which we might reject respondent's finding that the condemnation of 45 Wall Street as part of respondent's New York Stock Exchange Project will result in substantial public benefit. Respondent's finding that the departure of the New York Stock Exchange from New York City's financial district would be detrimental to the City and State economy is rationally supported by the record as are its findings that the proposed New York Stock Exchange Project, by creating the conditions necessary to retain the New York Stock Exchange in Lower Manhattan, will result in substantial public benefits, among them increased tax revenues, economic development and job opportunities as well as preservation and enhancement of New York's prestigious position as a worldwide financial center. Having found that respondent's findings as to the public utility of respondent's Stock Exchange Project, of which the condemnation of 45 Wall Street is an integral part, are rationally supported in the record made before respondent,

our review function is exhausted and those findings must be left judicially undisturbed (*Jackson, supra*, at 425). We note in this connection that respondent's public use findings are not impaired by the circumstance that the proposed project will incidentally confer a private benefit (*see, Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536, *appeal dismissed* 83 NY2d 905), and that although petitioners argue that the project is unnecessary, judging the need of the project here at issue is a matter we are bound to leave to the Legislature (*see, New York State School Bus Operators Assn. v County of Nassau*, 39 NY2d 638, 640; *see also, Joslin Mfg. Co. v City of Providence*, 262 US 668, 678).

While petitioners contend that respondent's relocation findings in purported satisfaction of the requirements of Urban Development Corporation Act § 10 are insufficiently supported, the record adequately sets forth the elements of an effective relocation plan, including the provision of real estate brokerage services to vacating residential and commercial tenants without charge, an allowance for moving expenses, a stipend for other ancillary costs and inconvenience, and a full time Relocation Manager available at no cost to tenants to provide them with information and assistance. Accordingly, it cannot be said that respondent's finding that the requirements of Urban Development Corporation Act § 10 (g) and (h) had been satisfied was without foundation (*see, Jackson, supra*, at 425).

We have considered petitioners' remaining arguments and find them unavailing. Concur—Williams, J. P., Mazzarelli, Andrias, Ellerin and Saxe, JJ.