■ DOMINICK VITUCCI, Appellant, v NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY et al., Respondents. [735 NYS2d 560] —In an action, *inter alia*, to compel the defendant New York City School Construction Authority to reconvey the subject condemned property to the plaintiff based upon the exercise of his alleged right of first refusal pursuant to EDPL 406 (A), the plaintiff appeals from an order and judgment (one paper) of the Supreme Court, Kings County (Scholnick, J.), dated February 22, 2001, which, upon denying his motion for summary judgment and granting the defendants' cross motion for summary judgment dismissing the complaint, dismissed the complaint.

Ordered that the order and judgment is affirmed, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

The plaintiff formerly owned a parcel of real property on Atlantic Avenue in Brooklyn from which he conducted business repairing and selling used trucks. In 1992 his property was condemned for the construction of a new public school. The plaintiff ultimately quit the premises and was reportedly paid $2.45 million for his property.

For reasons not relevant to this appeal, the plans to build the school never came to fruition. Rather, the defendants New York City Economic Development Corporation and the City of New York (hereinafter collectively the City), determined that the area would benefit from the creation of an urban renewal project. The object of this project was the expansion of the facilities of Blue Ridge Farms, a food production business whose premises virtually surrounded the plaintiff's former property, and which is reportedly a major area employer. Blue Ridge Farms allegedly had long desired the plaintiff's land for business expansion purposes.

The plaintiff thereafter commenced this action, contending that the abandonment of the proposal to build a new school had triggered his right of first refusal pursuant to EDPL 406 (A). The Supreme Court, *inter alia*, awarded summary judgment to the defendants dismissing the complaint, upon determining that the plaintiff's right of first refusal had not been triggered. We affirm.

EDPL 406 (A) provides, in pertinent part: "If, after an

acquisition in fee pursuant to the provisions of this chapter, the condemnor shall abandon the project for which the property was acquired, and the property has not been materially improved, the condemnor shall not dispose of the property or any portion thereof for private use within ten years of acquisition without first offering the former fee owner of record at the time of acquisition a right of first refusal to purchase the property at the amount of the fair market value of such property at the time of such offer."

At common law there was no right of first refusal available to a condemnee (*see, Matter of City of New York [Consolidated Gas Co.],* 190 NY 350). Once condemned, the condemnee's rights in the property were completely extinguished. Pursuant to the prevailing rule, "[a]s long as the original condemnation was in good faith for a public purpose, the condemnor 'may subsequently convert [the property] to other uses, or even abandon it entirely, without any impairment of the validity of the estate originally acquired, or [any] reversion to the former owners' " (*Matter of Bottillo v State of New York,* 53 AD2d 975, quoting *Fur-Lex Realty v Lindsay,* 81 Misc 2d 904, 905; *see, Brooklyn Park Commrs. v Armstrong,* 45 NY 234). EDPL 406, which was enacted in 1977, created exceptions to the common-law rule. One purpose of the statute was to give the former owner a right of first refusal before the condemnor could sell the property to a "private party" (*see, Matter of Mary Chamberlain Trust v Litke,* 73 NY2d 824, 825).

There is little doubt that the City would be authorized to condemn property for a school and then decide to use the property for a different public purpose such as a library or a museum. In general, the power of eminent domain may be exercised to take property as long as there is a legitimate public purpose to the taking (*see, Matter of East Thirteenth St. Community Assn. v New York State Urban Dev. Corp.,* 84 NY2d 287; *Matter of Central Hudson Gas & Elec. Corp. [Berger],* 274 AD2d 860; *Matter of Rockland County Sewer Dist. No. 1 v J. & J. Dodge,* 213 AD2d 409; 51 NY Jur 2d, Eminent Domain, § 19). Pursuant to the established rule, as long as the initial taking was in good faith, there appears to be little limitation on the condemnor's right to put the property to an alternate use upon the discontinuation of the original planned public purpose.

The terms "public use" or "public purpose" are broadly defined as encompassing virtually any project that may further the public benefit, utility, or advantage (*see,* 51 NY Jur 2d, Eminent Domain, § 22). Projects may have a public purpose notwithstanding that private entities may directly benefit

therefrom (see, *Matter of Waldo's, Inc. v Village of Johnson City,* 74 NY2d 718; *Matter of Duryea v Town of E. Hampton,* 172 AD2d 752; 51 NY Jur 2d, Eminent Domain, § 25). Indeed, to further "urban renewal," it is permissible for a municipality to condemn property to aid commercial development that may be beneficial to the area, notwithstanding that it may also be to the benefit of a private commercial entity (see, *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Yonkers Community Dev. Agency v Morris,* 37 NY2d 478; *Matter of Glen Cove Community Dev. Agency [Ardaas, Inc.],* 259 AD2d 750). If a municipality determines that a new business may create jobs, provide infrastructure, and stimulate the local economy, those are legitimate public purposes which justify the use of the power of eminent domain (see, *Sunrise Props. v Jamestown Urban Renewal Agency,* 206 AD2d 913).

Based on the foregoing rules, the plaintiff had no cognizable right to compel the defendants to offer to resell his former property to him. The City validly condemned the plaintiff's land for one public purpose, and when that proved infeasible, the City proposed a new public purpose; the expansion of the facilities of a major employer and economic force in the area. While the property may be destined to be deeded to Blue Ridge Farms, it was condemned for one legitimate public purpose, a school, which was supplanted by an amended purpose of urban renewal, undeniably also a legitimate public purpose.

The statutory right of first refusal only restricts the City from disposing of the property "for private use" within 10 years from condemnation without first offering it to the plaintiff. Here, the City was not about to dispose of the property "for private use." This was not a sale of surplus realty to the highest bidder for unrestricted use. The City determined that this property would enable Blue Ridge Farms to expand and increase its work force to the direct benefit of the surrounding neighborhood. Thus, the City was not disposing of the property for private use, but was designating it for an urban renewal project, albeit one of a small scale. Viewed in this light, the plaintiff's right of first refusal was never triggered. Accordingly, the Supreme Court correctly awarded summary judgment to the defendants dismissing the complaint. O'Brien, J. P., S. Miller, Schmidt and Cozier, JJ., concur.