[744 NYS2d 121]

In the Matter of WEST 41ST STREET REALTY LLC et al., Petitioners, v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Doing Business as EMPIRE STATE DEVELOPMENT CORPORATION, et al., Respondents.

In the Matter of 632 EIGHTH AVENUE ASSOCIATES, LLC, Petitioner, v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Doing Business as EMPIRE STATE DEVELOPMENT CORPORATION, et al., Respondents.

In the Matter of ROMACK REALTY CORP., Petitioner, v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Doing Business as EMPIRE STATE DEVELOPMENT CORPORATION, et al., Respondents.

In the Matter of THREE O REALTY LLC, Petitioner v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Doing Business as EMPIRE STATE DEVELOPMENT CORPORATION, et al., Respondents.

First Department, June 20, 2002

## APPEARANCES OF COUNSEL

*Guy Miller Struve* of counsel (*Rebecca L. Winters, Laura Ann Rosenbury* and *Lorilee A. Vaughan* on the brief; *Davis Polk & Wardwell,* attorneys), for West 41st Street Realty LLC, and others, petitioners.

*Donna-Marie Korth* of counsel (*M. Allan Hyman* and *Edward G. McCabe* on the brief; *Certilman Balin Adler & Hyman, LLP,*

attorneys), for 632 Eighth Avenue Associates, LLC and another, petitioners.

*Mark I. Silberblatt* of counsel (*Novack Burnbaum Crystal LLP,* attorneys), for Three O Realty LLC, petitioner.

*John R. Casolaro* of counsel (*Joseph M. Ryan* and *Susan B. Kalib* on the brief; *Carter, Ledyard & Milburn,* attorneys), for New York State Urban Development Corporation, doing business as Empire State Development Corporation and another, respondents.

## OPINION OF THE COURT

BUCKLEY, J.

This original proceeding, brought pursuant to Eminent Domain Procedure Law § 207, involves the well-publicized and previously litigated renovation of Times Square (*see, e.g. Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400). Specifically, six real property owners challenge a determination and findings of respondent New York State Urban Development Corporation (UDC) to authorize condemnation and acquisition of real property designated as Site 8 South comprising land across Eighth Avenue from the Port Authority Bus Terminal, a parcel which has been marked for condemnation for some time. Since we find that there is sufficient public purpose warranting respondent's determination to initiate condemnation and that petitioners have failed to demonstrate any other legal infirmity in the UDC determination, we confirm the determination and dismiss this proceeding.

Section 207 of the Eminent Domain Procedure Law limits the scope of our review to whether: (1) the condemnation proceedings were constitutional; (2) the proposed acquisition is within the statutory jurisdiction of the condemnor; (3) the condemnor's determination and findings were made in accordance with relevant provisions of the Eminent Domain Procedure Law and the Environmental Conservation Law; and (4) the proposed acquisition will serve a public use, benefit or purpose (*Pizzuti v Metropolitan Tr. Auth.*, 67 NY2d 1039, 1041; *Matter of Congregation Gates of Prayer of Far Rockaway v New York City School Constr. Auth.*, 286 AD2d 439). Petitioners argue that the proposed taking should be barred because the benefit inures to a private party, viz., The New York Times. They also allege a taking in violation of due process protections of the State and Federal Constitutions on the ground that the UDC itself created any "blight" which justifies condemnation since the UDC made it impossible for the owners to reap the

value of their land during the last 20 years. Notably, petitioners do not seek judicial relief on either the second or third statutory grounds, so we proceed on the assumptions that the proposed acquisition is within the statutory jurisdiction of the UDC and that the UDC has otherwise complied with relevant provisions of the Eminent Domain Procedure Law and the Environmental Conservation Law. A review of the procedural history preceding this action is necessary to understand the context in which petitioners raise their alternate claims of insufficient public use and inordinate delay in effecting condemnation.

Since 1968, the UDC has been authorized to acquire any real property pursuant to the Eminent Domain Procedure Law if it finds that such acquisition would be necessary or convenient for its purposes (McKinney's Uncons Laws of NY § 6263 [New York State Urban Development Corporation Act (UDCA) § 13; L 1968, ch 174, § 1, as amended]). Based on legislative findings that many existing industrial, manufacturing and commercial facilities in New York's urban areas have become obsolete, dilapidated or underutilized and that such conditions contribute to a wide range of social problems, the UDC was created to engage in a variety of activities to facilitate the acquisition, construction, reconstruction, rehabilitation or improvement of industrial, manufacturing and commercial facilities (McKinney's Uncons Laws of NY § 6252 [UDCA § 2]). When considering land use improvement projects, the UDC is required to find that: (1) the proposed project site is substandard or unsanitary and impairs sound growth and development; (2) there is a plan for clearance, replanning, reconstruction and rehabilitation of that area; and, (3) the plan affords maximum participation by private enterprise (McKinney's Uncons Laws of NY § 6260 [c] [UDCA § 10 (c)]). The real estate involved here, denominated Site 8 South, fronts on Eighth Avenue from 40th to 41st Streets, running halfway toward Seventh Avenue. Petitioners own separate portions of Site 8 South.

The UDC began involvement with redeveloping Times Square with its execution of a memorandum of understanding in 1980 followed by a general project plan in 1984. The New York City Board of Estimate authorized development of sites later that year based on UDC plans to develop the West 42nd Street area to overcome blight, physical and economic decay, and crime and frightening street life. The Court of Appeals upheld UDC's exercise of eminent domain power when community residents, area businesses and property owners challenged

various aspects of these plans (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400).

The 42nd Street Development Land Use Improvement Project aimed at revitalization of approximately 13 acres of land in the Times Square area of midtown Manhattan. The earliest redevelopment plans called for a retail mart on Site 8 with a pedestrian bridge to the Port Authority terminal. Empire State Development Corporation (ESDC), a subsidiary of UDC, has carried out the project in successive stages: (1) taking title to nine acres in 1990; (2) acquiring Site 7 in 1994; and (3) acquiring Site 8 East in 1995. Site 8 South and Site 8 North remain the last privately held sites in this project's area. Revised plans in 1994 deferred the retail mart while entertainment and tourism were developed on Site 8 North, on Eighth Avenue between 41st and 42nd Streets. Negotiations between ESDC and The New York Times began in late 1999 and produced a memorandum of understanding in June 2000 which contemplated that ESDC would condemn Site 8 South and lease it to the Times. A high rise office tower would be built at Site 8 South providing the Times with a new headquarters, as well as providing 700,000 square feet of space for other office tenants. The tower would additionally include condominiums, a new subway entrance, mandatory ground-floor public amenities, a 350-seat auditorium, a gallery and retail space. Witnesses at a public hearing conducted by ESDC in 2001 testified that this project would keep the Times headquartered in Times Square, add needed office space, create employment, increase retail revenue, attract further economic improvement to the larger area, and address a critical shortage of commercial space. Other testimony detailed how the proposal would provide a needed spur to Eighth Avenue development by linking the renovated Penn Plaza in the 30s with the Worldwide Plaza in the 50s. Other witnesses testified that much of the original blighted condition of the Site 8 South area remained unchanged during the past two decades. The businesses in the site include five adult entertainment centers and low-end retail and food establishments. An active street drug trade persists.

Project opponents contended that urban blight had been virtually eliminated in the project area. Alternatively, to the extent that urban blight remained, opponent witnesses claimed that private development had been effectively precluded due to the potential for condemnation which had existed for 20 years.

The eminent domain power does not originate in the Constitution but is a "necessary attribute of sovereignty * * *. The

power of eminent domain is the right of the state, as sovereign, to take private property for public use upon making just compensation" (*People v Adirondack Ry. Co.*, 160 NY 225, 236-237, *affd* 176 US 335). Of the two limitations on the exercise of this power, only public use is at issue here. Exercise of the eminent domain power cannot be for the sole benefit of a private party (*Thompson v Consolidated Gas Utils. Corp.*, 300 US 55). Public use only requires "an evident utility on the part of the public" (*Bloodgood v Mohawk & Hudson R.R. Co.*, 18 Wend 9, 14). While a public benefit or use must be present, it is "broadly defined" and our review on this point is limited to ascertain whether the project is rationally related to a conceivable public purpose (*Vitucci v New York City School Constr. Auth.*, 289 AD2d 479, 480; *Matter of Fisher [New York State Urban Dev. Corp.]*, 287 AD2d 262, 263; *Greenwich Assoc. v Metropolitan Transp. Auth.*, 152 AD2d 216, 219, *appeal dismissed sub nom. Matter of Regency-Lexington Partners v Metropolitan Transp. Auth.*, 75 NY2d 865). The scope of our review is necessarily narrow since this exercise of the eminent domain power is a legislative function (*Kaskel v Impellitteri*, 306 NY 73, 80, *cert denied* 347 US 934; *Matter of New York City Hous. Auth. v Muller*, 270 NY 333, 339). A separate constraint is a consequence of our review of a determination made after a hearing. The ESDC "public purpose" determination must be affirmed if there exists "substantial evidence" in the hearing record (*Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239). Petitioners could only prevail in this proceeding if they demonstrated that the determination is not rationally related to a conceivable public purpose (*Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 720; *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 420-421; *East Thirteenth St. Community Assn. v New York State Urban Dev. Corp.*, 189 AD2d 352, 359, *affd* 84 NY2d 287).

Petitioners have not sustained their burden of showing that the challenged determination is without foundation (*see, Sunrise Props. v Jamestown Urban Renewal Agency*, 206 AD2d 913, *lv denied* 84 NY2d 809). The record shows that "the exercise of the eminent domain power is rationally related to a conceivable public purpose" (*see, Hawaii Hous. Auth. v Midkiff*, 467 US 229, 241), that purpose being the further reduction of the blight that has long pervaded the subject area (*see, Rosenthal & Rosenthal Inc. v New York State Urban Dev. Corp.*, 771 F2d 44, 46, *cert denied* 475 US 1018). Given the breadth

with which public use is defined in the condemnation context (*see, Matter of Fisher [New York State Urban Dev. Corp.]*, 287 AD2d 262, 263), we find that a public purpose is dominant, warranting confirmation of the challenged determination, even though a private entity will benefit substantially from its involvement in the project (*see, Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 721). We are unpersuaded by petitioners' unsubstantiated assertion that the goals of the urban renewal plan have been achieved (*see, Jo & Wo Realty Corp. v City of New York*, 157 AD2d 205, 218, *affd* 76 NY2d 962). Virtually all of the anticipated outcomes of this project clearly serve a public purpose by eliminating a pernicious blight which has impaired the economic development of a midtown Manhattan neighborhood. That a private business may obtain substantial benefits does not call into question the use of eminent domain and, under the circumstances, a statutory purpose of the UDC has been furthered. Petitioners' claim that restrictions placed by respondent UDC upon their use of the subject property have amounted to takings without due process is without merit, since respondents have not deprived any petitioner of the use and enjoyment of its land for a period of indefinite duration (*cf., Jensen v City of New York*, 42 NY2d 1079, 1080-1081). The record is devoid of evidence which would support petitioners' conclusory allegations that the long-standing prospect of condemnation barred them from ameliorating or eliminating the persistent urban blight in the project area. We have considered petitioners' remaining arguments in opposition to the challenged determination and find them unavailing.

Accordingly, the determination and findings of respondent New York State Urban Development Corporation, issued on or about November 30, 2001, which directed that respondent Empire State Development Corporation exercise its power of condemnation in order to acquire, as necessary, real property designated Site 8 South within the 42nd Street Project, should be confirmed, the applications brought pursuant to Eminent Domain Procedure Law § 207 denied and the petitions dismissed, without costs or disbursements.

SAXE, J.P., ROSENBERGER, FRIEDMAN and MARLOW, JJ., concur.

Applications pursuant to Eminent Domain Procedure Law § 207 denied, the determination and findings confirmed and the petitions dismissed, without costs or disbursements.