■ In the Matter of ELISELLE ANDERSON et al., Petitioners, v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Doing Business as EMPIRE STATE DEVELOPMENT CORPORATION, Respondent. [846 NYS2d 218]—

Proceeding pursuant to EDPL 207 to review a determination of the New York State Urban Development Corporation, doing business as Empire State Development Corporation, dated December 8, 2006, made after a public hearing, authorizing the condemnation of certain real property.

Adjudged that the determination is confirmed, with costs, the petition is denied, and the proceeding is dismissed.

Judicial review of a condemnation proceeding is limited to whether (1) the proceeding was in conformity with the federal and state constitutions, (2) the proposed acquisition was within the condemnor's statutory jurisdiction or authority, (3) the condemnor's determinations and findings were made in accordance with the procedures set forth in EDPL article 2 and the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), and (4) a public use, benefit, or purpose will be served by the proposed acquisition (*see* EDPL 207 [C]; *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 418 [1986]). "If an adequate basis for a determination is shown 'and the objector cannot show that the determination was 'without foundation', the agency's determination should be confirmed' " (*Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 720 [1989], quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 425; *see Long Is. R.R. Co. v Long Is. Light. Co.*, 103 AD2d 156, 168 [1984], *affd* 64 NY2d 1088 [1985]).

The petitioners contend that the respondent failed to satisfy the requirements of the New York State Urban Development Corporation Act (hereinafter the UDC Act) § 10 (g) (McKinney's Uncons Laws of NY § 6260 [g]), which provides that the respondent is without authority to condemn real property except upon finding that there is "a feasible method for the relocation of families and individuals displaced from the project area into decent, safe and sanitary dwellings, which are or will be provided in the project area or in other areas not generally less desirable in regard to public utilities and public and commercial facilities, at rents or prices within the financial means of such families, and reasonably accessible to their places of employment" (hereinafter a feasible method for relocation). The petitioners argue that the respondent failed to make a specific finding that there existed a feasible method for relocation and, to the extent that such a conclusion can be inferred, that it is without foundation in the record. We have reviewed the petitioners' contentions and find them to be without merit.

Contrary to the petitioners' argument, the respondent did find, in its resolutions dated July 8, 2006, which were ratified and reaffirmed in resolutions dated December 8, 2006, that a feasible method for relocation existed. The foundation for that finding is in the final environmental impact statement (hereinafter FEIS), which was explicitly referenced in one of the resolutions dated December 8, 2006. The petitioners do not challenge the finding, reflected in the FEIS, that only 146 residents would be displaced by the project, and that this number of residents constitutes less than one tenth of one percent of the residents within a three-quarter-mile radius of the project. In these circumstances, the petitioners' argument that the respondent was required to conduct an additional study of the availability of housing in the area is without merit, and the plan for services to the displaced residents that the respondent has adopted, including professional relocation consulting, real estate brokerage and moving services, the payment of moving expenses, and an additional monetary payment for other ancillary expenses, provides a sufficient foundation for the respondent's finding that a feasible method for relocation exists (*see Matter of Fisher [New York State Urban Dev. Corp.]*, 287 AD2d 262, 264 [2001]).

The petitioners' contention that the respondent failed to take a "hard look" at the impact on them of their displacement from their residences, in accordance with SEQRA, is also without merit. While SEQRA review requires a lead agency to take a hard look at the socioeconomic impact of a project on the community as a whole, including "the impact that a project may have on population patterns or existing community character, with or without a separate impact on the physical environment" (*Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 366 [1986]), the agency is not obligated to separately consider the impact on a particular subgroup or upon particular individuals (*see Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d at 420-421). Here, a review of the FEIS reveals that the respondent appropriately considered the impact that the displacement of all households within the project site would have on the socioeconomic profile and character of the community as a whole, and there is no basis upon which to disturb its conclusion that the project would not lead to a significant adverse socioeconomic impact due to direct residential displacement. Spolzino, J.P., Santucci, Angiolillo and Dickerson, JJ., concur.